Frank E. Scherkenbach (CA #142549)
scherkenbach@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, Massachusetts 02110-1878
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack (CA #162897)
pollack@fr.com
Michael R. Headley (CA #220834)
headley@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, FAIRCHIL D SEMICONDUCTOR CORPORATION, a Delaware corporation, and SYSTEM GENERAL CORPORATION, a Taiwanese corporation,<br><br>Defendants. | Case No. CV 09-5235 MMC<br><br>**POWER INTEGRATIONS' NOTICE AND MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND 35 U.S.C. § 285**<br><br>Date:   Jan. 18, 2013<br>Time:  9:00 a.m.<br>Place:  Courtroom 7, 19th Floor<br>Judge: Hon. Maxine Chesney |

# **TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION & STATEMENT OF ISSUES ............................................................ 1

II.  SUMMARY OF FACTS .................................................................................................. 3

    A.   All Claims of the '700 Patent Require a "Minimum On Time" That Varies According to an Input Voltage. ................................................................ 3

    B.   The Accused LinkSwitch-II Products Use a Switching Signal With a Fixed Minimum On Time That Does Not Vary. ................................................ 4

    C.   Fairchild Had Extensive Knowledge About the Functionality of the Accused Products Prior to Filing Its Counterclaim Because It Previously Pursued Infringement Claims Against These Same Products in a Prior Litigation. ....................................................................................... 5

III. ARGUMENT ................................................................................................................... 6

    A.   Legal Standards ...................................................................................................... 6

        1.   Sanctions Pursuant to Federal Rule of Civil Procedure 11 ....................... 6

        2.   Attorney Fees Pursuant to 35 U.S.C. § 285 ............................................... 6

    B.   Fairchild's Infringement Counterclaim on the '700 Patent Is Frivolous. .............................................................................................................. 7

        1.   The '700 Patent Discloses and Claims a Control Circuit With a Switching Signal Having a Variable Minimum On Time. ......................................................................................................... 7

        2.   Power Integrations' Accused LinkSwitch-II Products Cannot Infringe Any Claim of the '700 Patent, And Fairchild Knew It. ................................................................................................ 10

    C.   The Court Should Award Power Integrations Its Reasonable Attorney Fees Under 35 U.S.C. § 285. ................................................................ 12

    D.   The Court Should Also Sanction Fairchild Under Its Inherent Authority. ............................................................................................................... 13

IV.  CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brilliant Instruments, Inc. v. Guidetech, Inc.*,
  No. 09-5517, 2012 WL 4497781 (N.D. Cal. Sept. 28, 2012) .................................................. 7

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed.Cir.2005) ................................................................................................. 7

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................................................ 13

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ................................................................................................................ 6

*Eltech Systems Corp. v. PPG Industries Inc.*,
  710 F. Supp. 622 (W.D. La. 1988) .......................................................................................... 3

*Eltech Systems Corp. v. PPG Industries, Inc.*,
  903 F.2d 805 (Fed. Cir. 1990) ............................................................................................ 3, 7

*EnComp, Inc. v. L-com, Inc.*,
  999 F. Supp. 264 (D. Conn. 1998) .......................................................................................... 7

*Estate of Blue v. County of Los Angeles*,
  120 F.3d 982 (9th Cir. 1997) ................................................................................................... 6

*G.C. & K.B. Investments, Inc. v. Wilson*,
  326 F.3d 1096 (9th Cir. 2003) ........................................................................................... 6, 12

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  687 F.3d 1300 (Fed. Cir. 2012) ............................................................................................... 7

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ............................................................................................. 10

*Interspiro, Inc. v. Figgie Int'l, Inc.*,
  815 F. Supp. 1488 (D. Del. 1993), *aff'd*, 18 F.3d 927 (Fed. Cir. 1994) ............................... 12

*Judin v. United States*,
  110 F.3d 780 (Fed. Cir. 1997) ................................................................................................. 6

*Kelter v. Associated Fin. Group, Inc.*,
  382 F. App'x 632 (9th Cir. 2010) ............................................................................................ 6

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) ................................................................................................. 7

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ................................................................................... 3, 7, 13

*Phonometrics, Inc. v. Economy Inns of America*,
    349 F.3d 1356 (Fed. Cir. 2003) ............................................................................................ 6

*Rock Bit Intern., Inc. v. Smith Intern., Inc.*,
    82 F. Supp. 2d 677 (S.D. Tex. 1999) ................................................................................... 7

*Universal Trading & Inv. Co. v. Dugsbery Inc.*,
    No. 08-03632, 2011 WL 1302255 (N.D. Cal. Apr. 5, 2011) ............................................ 6, 12

**STATUTES**

35 U.S.C. § 285 ............................................................................................................... passim

**OTHER AUTHORITIES**

FRCP § 11 ....................................................................................................................... passim

**NOTICE OF MOTION**

TO DEFENDANTS HEREIN AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 11, 2013 at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiff Power Integrations, Inc. ("Power Integrations") will and hereby does move for an order sanctioning Defendants Fairchild Semiconductor International, Fairchild Semiconductor Corporation, and System General Corporation (collectively "Fairchild") pursuant to Federal Rule of Civil Procedure 11, 35 U.S.C. § 285, and the Court's inherent authority, including dismissal, fees, and costs, on the ground that Fairchild filed a frivolous counterclaim for infringement of U.S. Patent No. 8,179,700 ("the '700 patent").

The motion is based upon this Notice of Motion and Memorandum of Points and Authorities, the accompanying declarations of Michael R. Headley ("Headley Decl.") and Dr. Arthur Kelley ("Dr. Kelley Decl.") filed herewith, and any such argument and evidence that may be presented at a motion hearing. As explained in detail below, Fairchild filed its counterclaim with knowledge that the accused products cannot possibly infringe any valid claim of the '700 patent. At the very least, Fairchild failed to conduct an adequate pre-suit investigation, which would have demonstrated that Fairchild's counterclaim is objectively baseless. Thus, Power Integrations seeks dismissal and sanctions under Rule 11 and/or 35 U.S.C. § 285.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION & STATEMENT OF ISSUES**

Fairchild's new counterclaim for infringement of the '700 patent[1] is its latest effort to "punch back" after having lost multiple jury verdicts and an ITC proceeding and suffering dismissal (voluntary and involuntary) of multiple prior counterclaims of its own against Power Integrations. Fairchild's counterclaim for infringement of the '700 patent is frivolous on its face; Fairchild's apparent aim is to garner an advantage in the marketplace, delay the resolution of Power Integrations' own legitimate infringement claims by complicating these proceedings, and increase the cost of litigation for Power Integrations.

---

[1] A copy of the '700 patent is attached as Exhibit 1. Unless noted otherwise, all exhibit citations refer to the accompanying Declaration of Michael R. Headley.

This is not the first time Fairchild has pursued a baseless claim.  One prior example involved Fairchild buying a third party's putative cause of action against Power Integrations.  That claim (in Delaware) was dismissed because, having bought only a potential lawsuit and not the underlying patent, Fairchild did not have standing to assert the patent.  [Ex. 2 (Case No. 1:07-cv-187-JJF, D.I. 89, Memorandum Opinion dismissing Fairchild's first countersuit for lack of standing).]  In other litigation between the parties in Delaware, Fairchild withdrew its claim for infringement of U.S. Patent No. 7,061,780 after the Court construed the claims exactly as Power Integrations had told Fairchild they must be construed from the beginning of the case.  [Ex. 3 (Letter to Guy from Pollack re "multi-sampling" dated May 12, 2009); Ex. 4 (Case No. 1:08-cv-309-JJF-LPS ("*PI-Fairchild II*"), D.I. 212 at 15 (finding a "clear intent" to define the term as Power Integrations proposed and noting that "[t]here is no teaching as to how the circuit would operate" if construed according to Fairchild's proposal); *id.* at 43; Ex. 5 (*PI-Fairchild II*, D.I. 337, Order adopting claim constructions); Ex. 6 (January 12, 2010 letter re dropping the '780 patent).]  A third example occurred earlier in this litigation, when Fairchild asserted U.S. Patent No. 7,257,008—only to drop it hastily because that patent was blatantly invalid in view of Power Integrations' own prior inventions.  [Ex. 7 (July 19, 2010 letter dropping the '008 patent).]

There is a disturbing pattern here, and Fairchild's latest frivolous infringement claim is perhaps the worst of the bunch.  As a result of the parties' prior and ongoing litigation in Delaware, Fairchild had extensive knowledge of the LinkSwitch-II product family now accused of infringing the '700 patent and therefore knew that there was no way to make such a claim in good faith.  Indeed, Fairchild analyzed technical specifications for the LinkSwitch-II products that conclusively show there is no infringement.  But even setting Fairchild's knowledge to one side, Fairchild's counterclaim on the '700 patent should not have been filed because an adequate pre-suit investigation would have revealed that Power Integrations could not possibly infringe.  In particular, each claim of the '700 patent recites a control circuit having <u>a switching signal with a **minimum on time** that is **"adjusted," "changed," or "varied"** according to an input voltage</u>.  There is simply no objectively reasonable way to construe the claims to eliminate this requirement – the minimum on time must be variable.  In contrast, and as the publicly available datasheet for the accused

LinkSwitch-II products shows, when the switch in the accused product is turned on, <u>the switching signal stays **on for a fixed amount of time**</u> that does <u>not</u> change at all, whether based on an input voltage or otherwise.  Rule 11 sanctions are therefore appropriate.

In addition, Fairchild's conduct in bringing such a frivolous claim is precisely the kind of exceptional situation that 35 U.S.C. § 285 is meant to address.  *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) (affirming an award of attorney fees where the District Court stated "[t]he filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitutes grounds for declaring a case exceptional under 35 U.S.C. § 285"); *Eltech Systems Corp. v. PPG Industries Inc.*, 710 F. Supp. 622, 636 (W.D. La. 1988) (citations omitted)); *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988) ("Provisions for increased damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285 are available as deterrents to blatant, blind, willful infringement of valid patents.  The only deterrent to the equally improper bringing of clearly unwarranted suits on obviously invalid or unenforceable patents is Section 285.").  Given the facial defects in the counterclaims for infringement of the '700 patent, the Court should dismiss the claim as objectively baseless, sanction Fairchild under Rule 11, declare this case exceptional, and award Power Integrations its fees and costs.

## II.     SUMMARY OF FACTS

The facts are straightforward and should be undisputed:

**A.     All Claims of the '700 Patent Require a "Minimum On Time" That Varies According to an Input Voltage.**

- Each independent claim (Claims 1, 8, 15) recites a switching signal that controls the power converter switch and which includes a variable "minimum on time."   Claim 1 recites:

    1. A control circuit of a power converter, comprising:
    a switch coupled to a transformer for switching the
      transformer;
    a sampling circuit coupled to the transformer for sampling a
      reflected voltage of the transformer to generate a voltage
      signal in accordance with the reflected voltage;
    a switching circuit coupled to the sampling circuit for
      generating a switching signal to control the switch and to
      regulate the output of the power converter in response to
      the voltage signal;

        a conversion circuit generating an adaptive signal correlated to an input voltage of the power converter and transmitting the adaptive signal to the switching circuit;
        **wherein the adaptive signal is coupled to adjust a minimum on time of the switching signal, and the minimum on time of the switching signal is inverse proportion to the input voltage of the power converter;**
        wherein the sampling circuit comprises:
        a sample unit coupled to the transformer to generate the voltage signal by sampling the reflected voltage of the transformer; and
        a sample-signal generation circuit generating at least one sample signal in response to the switching signal;
        wherein the sample signal is coupled to control the sampling time of the sample unit.

- Claim 8 recites in relevant part:

  A control circuit, comprising:
  …
  wherein a <u>minimum on time</u> of the switching signal **is changed** in response to the change of an input voltage of the power converter;

- Claim 15 recites in relevant part:

  A control circuit, comprising:
  …
  wherein a <u>minimum on time</u> of the switching signal **is varied** in response to the change of an input voltage of the power converter;

- The switching signal with the minimum on time operates the power switch coupled to the power supply controller, switching it on and off in order to regulate the output voltage.

- From one cycle to the next, the minimum on time <u>varies according to the input voltage</u> signal of the power converter. [Ex. 1 at col. 5 ll. 14-16.]

**B.  The Accused LinkSwitch-II Products Use a Switching Signal With a Fixed Minimum On Time That Does Not Vary.**

- Fairchild has accused Power Integrations' LinkSwitch-II product family of infringing the '700 patent.

- The LinkSwitch-II products use Power Integrations' novel ON/OFF control scheme, which utilizes a state machine that decides whether, for any given

cycle, the switching signal should be turned on <u>at all</u>.  [Ex. 8 (LinkSwitch-II Family Datasheet of January 2010).][2]

- o  When the switching signal is turned on, it is turned on for a <u>fixed</u> minimum amount of time that <u>does not vary</u>.  Specifically, the switching signal is turned on for approximately 700 nanoseconds.  [*Id.* at 9.]

- o  The fixed minimum on time in Power Integrations' accused LinkSwitch-II products has been measured and characterized in actual working power supplies.  [*Id.* at 10 n. 5.]

**C. Fairchild Had Extensive Knowledge About the Functionality of the Accused Products Prior to Filing Its Counterclaim Because It Previously Pursued Infringement Claims Against These Same Products in a Prior Litigation.**

Prior to filing its infringement counterclaim on the '700 patent, Fairchild was armed with extensive knowledge of how the accused LinkSwitch-II products operate.  For example, Fairchild proceeded all the way to trial in Delaware this Spring based on an infringement claim regarding the same LinkSwitch-II products at issue here in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 08-309-LPS ("*PI-Fairchild II*").  In that trial, Fairchild relied on the LinkSwitch-II product schematics and data sheet in evaluating the structure and operation of the LinkSwitch-II products, and thus was very familiar with their operation.[3]  [Headley Decl. ¶ 14.]  Given that knowledge, neither Fairchild nor its counsel can plead ignorance regarding the <u>fixed minimum on time</u> of the LinkSwitch-II products.  In any event, as noted, the same information on the fixed minimum on time of the LinkSwitch-II is clear from the public data sheet for the product, so even in the absence of the confidential technical information Fairchild had by virtue of the Delaware case, Fairchild had access – pre-suit – to everything it needed to know its claim was baseless.

---

[2]  Power Integrations' TinySwitch product was the first to employ its patented ON/OFF control technology, and Power Integrations has received industry awards and accolades for its contributions to the field with that groundbreaking technology. [*See, e.g.,* Ex. 9 (TinySwitch datasheet) at 2 ("Unlike a conventional PWM (Pulse Width Modulator) controller, the TinySwitch uses a simple ON/OFF control to regulate the output voltage."); Ex. 10 (Power Integrations' U.S. Patent No. 6,226,190, issued for its ON/OFF control technology in 2001, more than a decade before the '700 patent); Ex. 11 (1999 Discover Magazine award to Power Integrations for its revolutionary TinySwitch products).]

[3]  The LinkSwitch-II schematics produced in the *PI-Fairchild II* case in Delaware were designated confidential pursuant to the protective order entered in that case, but the parties long ago agreed that their production documents would be cross-designated for use in the various cases without requiring the re-production of documents in each individual case.  As such, the LinkSwitch-II schematics produced in Delaware were equally available to Fairchild for use in this case.

## III. ARGUMENT

### A. Legal Standards

#### 1. Sanctions Pursuant to Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11 requires counsel to sign every pleading, written motion or other paper presented to the court, to certify that "to the best of the person's knowledge, information, and belief," the paper is not baseless or meant to further "any improper purpose" and was submitted "after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).

"Rule 11 is aimed at curbing baseless filings, which abuse the judicial system and burden courts and parties with needless expense and delay." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397-98 (1990)). Under Ninth Circuit precedent,[4] Rule 11 "provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997).

"[A] district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it. As shorthand for this test, we use the word 'frivolous' to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Kelter v. Associated Fin. Group, Inc.*, 382 F. App'x 632, 633 (9th Cir. 2010) (internal citations omitted). The test to determine whether an attorney has acted reasonably is whether a competent attorney admitted to practice before the district court would have submitted the paper in question. *See Universal Trading & Inv. Co. v. Dugsbery Inc.*, No. 08-03632, 2011 WL 1302255, at *4 (N.D. Cal. Apr. 5, 2011); *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003) (discussing reasonable person standard for Rule 11 purposes).

#### 2. Attorney Fees Pursuant to 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C.A. § 285. Should the Court find that Fairchild failed to adequately investigate its

---

[4] Under Federal Circuit law, the law of the regional circuit is applied when reviewing the imposition of Rule 11 sanctions. *Phonometrics, Inc. v. Economy Inns of America*, 349 F.3d 1356, 1361 (Fed. Cir. 2003).

counterclaims and that those claims objectively lack merit, Power Integrations would be the prevailing party. Awarding attorney fees under 35 U.S.C. § 285 is appropriate if a two-part test is satisfied. "First, a prevailing party must establish by clear and convincing evidence that the case is 'exceptional.'" *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012); *see MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915-16 (Fed. Cir. 2012). If the first part is met, then "a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award." *Id.*

Exceptional cases include frivolous claims, "vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brilliant Instruments, Inc. v. Guidetech, Inc.*, No. 09-5517, 2012 WL 4497781, at *3 (N.D. Cal. Sept. 28, 2012) (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed.Cir.2005)); *see Highmark*, 687 F.3d at 1308. Sanctions may also be imposed if "(1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* (internal citations omitted).

Courts have repeatedly found that the filing of a frivolous or baseless lawsuit makes a case exceptional and entitles the accused infringer to its reasonable attorney fees. *EnComp, Inc. v. L-com, Inc.*, 999 F. Supp. 264, 269-70 (D. Conn. 1998) (awarding fees for frivolous suit even after voluntary dismissal); *Rock Bit Intern., Inc. v. Smith Intern., Inc.*, 82 F. Supp. 2d 677, 677-678 (S.D. Tex. 1999) (awarding defendant over $2.5 million in fees because plaintiff filed suit when it knew its patent was invalid); *Eltech Systems Corp.*, 903 F.2d at 810 (affirming an award of attorney fees); *Mathis*, 857 F.2d at 754 ("Provisions for increased damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285 are available as deterrents to blatant, blind, willful infringement of valid patents. The only deterrent to the equally improper bringing of clearly unwarranted suits on obviously invalid or unenforceable patents is Section 285.").

### B. Fairchild's Infringement Counterclaim on the '700 Patent Is Frivolous.

#### 1. The '700 Patent Discloses and Claims a Control Circuit With a Switching Signal Having a Variable Minimum On Time.

The '700 patent relates generally to a "control circuit of [a] power converter", i.e. a circuit inside a chip that is used for a power supply. [Ex. 1, col. 1, ll. 8-10.] A power supply uses a

1  transformer, switch, and a control circuit to convert an unregulated input voltage (i.e. from the wall
2  socket) into a regulated output voltage that is provided to a device such as a laptop or a cell phone.
3  [*See id.* at col. 1, ll. 13-25.]  It uses the control circuit to generate a switching signal that controls the
4  switch, which allows the flow of energy into the transformer.  [*See id.*]  When the switch is on,
5  energy flows into the transformer; when it is turned off, energy is discharged from the transformer
6
7  to the output terminals.  [*See id.*]  The '700 patent in particular relates to a well-known technique
8  referred to as pulse width modulation ("PWM"), wherein the switch is turned on during each cycle
9  of an oscillator, and the percentage of time the switch remains turned on in each cycle – the "on
10 time" – is not fixed, but rather is varied in order to regulate the output voltage.  [Dr. Kelley Decl. at
11 ¶ 5.]  The alleged invention of the '700 patent relates to how, specifically, a minimum on time of
12 the switching signal is varied.  [*Id.*]
13
14      A control circuit that regulates the output voltage of a power converter also typically
15 monitors the output voltage to ensure it remains at the desired level.  [*See* Dr. Kelley Decl. at ¶ 4.]
16 However, it cannot simply measure the output voltage directly because the control circuit is
17 "isolated" from the output voltage by the transformer.  [*Id.*; Ex. 1, col. 1, ll. 12-17.]  Power supply
18 designs require this isolation for safety reasons.  [*Id.*]  Some control circuits use a feedback signal,
19 generated on the input or primary side of the power supply, to calculate the output voltage indirectly
20 using a "reflected voltage" of the transformer; this reflected voltage is proportional to the output
21
22 voltage during the time the switch is turned off.  [Ex. 1, col. 1, ll. 41-46.]  However, this technique
23 of using the reflected voltage to do primary side feedback has drawbacks.  For example, during
24 "light load conditions" (i.e. when a laptop does not need much power because it is in standby mode
25 or a period of light use), the switching signal remains on for a very short time each switching cycle,
26 and the resulting feedback signal becomes distorted.  [*Id.* at col. 1, l. 67 to col. 2, ll. 1-5.]  The stated
27 goal of the '700 patent is to overcome this drawback.  [Ex. 1, col. 2, ll. 5-25.]
28

To achieve its goal, the '700 patent describes a control circuit that generates an <u>adaptive</u> signal that is based on the input voltage of the power converter, and uses that adaptive signal to adjust the minimum on time of the switching signal. [Ex. 1, col. 2, ll. 10-25.] By adjusting the minimum on time in each cycle, the control circuit forces the switching signal to remain on long enough to "produce a minimum pulse width of the reflected voltage." [*Id.* at col. 5, ll. 11-30.] The '700 patent depicts a power supply in Figure 3, reproduced below, in which the integrated circuit (i.e. "chip" – referred to in the specification as "control circuit 50") is the box on the lower left-hand side. The switch (32) that controls the output of the power supply is indicated by red dashed lines in the figure. [*Id.* at col. 2, ll. 59-67.] The switching signal and input voltage are indicated by the notations $V_g$ and $V_{IN}$, respectively. Depending on the input voltage ($V_{IN}$), the switching signal ($V_g$) turns on the switch (32) for a minimum amount of time in a clock cycle. [*Id.* at col. 5, ll. 11-30.] The minimum on time may vary from one cycle to the next. [*See id.* at col. 5, ll. 13-25.]



FIG. 3

[*Id.* at Fig. 3 (emphasis added).]

The independent claims (1, 8, 15) of the '700 patent recite an adjustable minimum on time that varies according to the input voltage. [Ex. 1 at Claim 1 ("wherein the adaptive signal is coupled to adjust a minimum on time of the switching signal, and the minimum on time of the switching signal is inverse proportion to the input voltage of the power converter"); Claim 8 ("wherein a minimum on time of the switching signal is changed in response to the change of an input voltage of the power converter"); Claim 15 ("wherein a minimum on time of the switching signal is varied in response to the change of an input voltage of the power converter").] The meaning of the claims is clear; the minimum on time must be "varied," "changed," or "adjusted." These terms have common, English-language meanings, and there is nothing in the patent specification or claims suggesting they are being used in any unusual way. It is not objectively reasonable to assert that these terms can be interpreted to mean "**not** varied", "**not** changed" or "**not** adjusted", respectively, or in any other manner to negate the requirement that the value of the minimum on time is altered. *Cf. Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("If the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified."). Indeed, to assert such a construction would eviscerate the entire purpose of the claimed invention: to address the identified problem associated with a primary side feedback circuit. [Ex. 1 at col. 1, l. 36 to col. 2, l. 25.] As explained in detail below, the accused LinkSwitch-II products are missing at least this required element, and any reasonable pre-suit investigation would have concluded that the absence of this limitation is clear and unmistakable.

### 2. Power Integrations' Accused LinkSwitch-II Products Cannot Infringe Any Claim of the '700 Patent, And Fairchild Knew It.

In contrast to the alleged invention of the '700 patent, the accused LinkSwitch-II products work in a fundamentally different way. Rather than turning on the switch in every clock cycle for an amount of time that varies cycle-to-cycle in response to a sampled value of a measured reflected

voltage (i.e. "PWM control"), the LinkSwitch-II products instead employ a technique where, in any given cycle, the switch is either turned on for a substantially fixed time or it is not turned on at all, based on feedback information that is generated in a fundamentally different way from that described in the '700 patent (referred to as "ON/OFF" control). Because the feedback and regulation mechanisms are fundamentally different, the LinkSwitch-II does not experience the "problem" associated with a pulse-width modulated switch on time getting too short to generate a proper feedback signal, as described in the '700 patent. [*See* Ex. 9-11 and footnote 2 above.]

While it is true that the LinkSwitch-II ensures that the switch stays on for a minimum time in those selected cycles where the switch is turned on, in contrast with the circuit disclosed and claimed in the '700 patent, the LinkSwitch-II minimum on time is a fixed value – specifically 700 nanoseconds. [Dr. Kelley Decl. at ¶ 7 (citing Ex. 8 (LinkSwitch-II public datasheet) at 1-3, 9).] This fact is confirmed in the publicly available LinkSwitch-II datasheets. [Ex. 8 at 9 (700 nanosecond "Minimum Switch 'On'-Time"); *id.* at 10 n.5 (noting that the minimum on time parameter set out in the parameter table was based on actual measurements and is not merely a theoretical value).] After reviewing these datasheets, no person of ordinary skill in the art would reasonably come to any conclusion other than understanding that the minimum on time is fixed in the LinkSwitch-II devices. [Dr. Kelley Decl. at ¶ 10.] Thus, Fairchild either failed to conduct a reasonable pre-suit investigation, or it knew that Power Integrations' LinkSwitch-II products cannot infringe and brought its claim anyway.

In this case, the record shows that Fairchild actually knew that the LinkSwitch-II products cannot infringe the '700 Patent, and yet Fairchild went ahead with its counterclaim for infringement. Over a period spanning several years, Fairchild investigated and researched the accused LinkSwitch-II product family as part of its claims in another of the parties' cases in Delaware.[5] [Ex. 12 (*PI-Fairchild II*, D.I. 697) at 1.] Indeed, in the *PI-Fairchild II* trial that

---

[5] Notably, the '972 patent Fairchild asserted in the parties' ongoing litigation in Delaware includes a claim that specifically recites a "minimum on time" [Ex. 13 ('972 patent) at Claim 33], and Fairchild asserted that claim against Power Integrations' LinkSwitch-II products in that case, although Fairchild dropped the claim before trial. [Ex. 6 (Feeman 1/12/2010 letter dropping claims).] This history shows that Fairchild evaluated Power Integrations' LinkSwitch-II circuitry, with respect to the very same functionality relevant to the '700 patent, long ago.

concluded earlier this year, Fairchild relied on the LinkSwitch-II family product schematics and data sheet as trial exhibits. [Headley Decl. at ¶ 14.] These schematics specify how the accused products were implemented, and they conclusively show that the minimum on time for the switching signal is fixed in the LinkSwitch-II products, and does not vary (much less vary according to an input voltage as required in the '700 patent). [Dr. Kelley Decl. at ¶¶ 6-10 (explaining that the minimum on time is fixed and cannot be varied at all, nor is it affected by changes in the input voltage).] Any person of ordinary skill in the art would readily understand that the accused LinkSwitch-II products do not have a minimum on time that is "adjusted," "varied," or "changed" as recited in the claims of the '700 patent. [*Id.* at ¶ 5.] Because Fairchild cannot claim ignorance in order to justify its baseless counterclaim, sanctions are appropriate. No competent attorney, knowing what Fairchild knew, would have pursued this counterclaim. *See Universal Trading*, 2011 WL 1302255 at *4; G.C. & K.B. Investments, 326 F.3d at 1109. But even putting Fairchild's subjective knowledge to one side, no competent attorney would have brought this counterclaim because a reasonable inquiry would have included analysis of the publicly available LinkSwitch-II datasheets, which show that there is no way to assert that the LinkSwitch-II products infringe the '700 patent. Fairchild's claim is objectively baseless and should be dismissed.[6]

### C. The Court Should Award Power Integrations Its Reasonable Attorney Fees Under 35 U.S.C. § 285.

Fairchild has unjustifiably burdened this Court and Power Integrations with its frivolous infringement counterclaim. "An exceptional case is one in which it would be grossly unfair for the prevailing party to bear the cost of litigation, or where the conduct of the losing party is marked by bad faith or unfairness." *Interspiro, Inc. v. Figgie Int'l, Inc.*, 815 F. Supp. 1488, 1521 (D. Del. 1993), *aff'd*, 18 F.3d 927 (Fed. Cir. 1994). In this instance, it would certainly be unfair for Power Integrations to bear the costs it has incurred in defending against Fairchild's frivolous counterclaim on the '700 patent. While "[n]o award under Section 285 can fully compensate a defendant subjected to bad faith litigation, e.g., for loss of executives' time and missed business

---

[6] Even if someone had reason to doubt the unequivocal statements in the datasheet – and it is not reasonable for a person of ordinary skill in this art to have done so – an interested party could examine the actual product and confirm the fact that the minimum on time is unchanging through testing or reverse-engineering. [Dr. Kelley Decl. ¶ 10.]

opportunities," the Court can at least make the injured party partially whole. *Mathis*, 857 F.2d at 754. Although little discovery has been taken on Fairchild's infringement counterclaim, Power Integrations has still been required to analyze, respond to, and address Fairchild's frivolous claim, the related motions and correspondence, and the inevitable distraction from Power Integrations' business when Fairchild harasses Power Integrations with countersuits like this one. [Headley Decl. at ¶ 15.]

Under Section 285, the Court has broad discretion to determine the proper "quantum of the award, including the amount of attorney fees, what if any expenses shall be included, and the rate of prejudgment interest, if any, on the award." *Mathis*, 857 F.2d at 754. As such, Power Integrations seeks an award of monetary sanctions to compensate Power Integrations for its costs, out of pocket expenses, and attorneys' fees incurred in defending against Fairchild's counterclaims. Power Integrations will provide the court with a detailed accounting of its fees and costs incurred in defending the counterclaims, including for bringing this motion, for the Court's *in camera* review, if and when this motion is granted.

### D. The Court Should Also Sanction Fairchild Under Its Inherent Authority.

The Court may also exercise its inherent powers to award additional sanctions to penalize conduct that abuses the judicial process, and it should do so here to address Fairchild's frivolous claims. The Court has discretion in fashioning an appropriate sanction, and "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). The Court may exercise its inherent powers independent of, or in addition to, any available statutory scheme:

> There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct . . . But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.

*Id.* at 50.

In the present case, Fairchild's counterclaims were filed and prosecuted in bad faith. Moreover, as noted above, Fairchild has a pattern of pursuing frivolous claims. Thus, in addition to

awarding Power Integrations its fees and expenses under § 285, the Court should also sanction Fairchild and its counsel in whatever manner the Court deems appropriate to deter future such abuse of the judicial process and the Court's resources.

## IV.   CONCLUSION

Because Fairchild's counterclaim for infringement of the '700 patent stands in direct violation of Rule 11, Power Integrations respectfully requests that the Court put an end to Fairchild's latest attempt to derail Power Integrations' meritorious claims, dismiss the counterclaim for infringement of the '700 patent with prejudice, find that Fairchild violated Rule 11 and filed an exceptional case under Section 285, and award fees and costs accordingly, in addition to awarding whatever sanctions the Court deems just to deter future potential abuse of the system.

Dated:  December 11, 2012                    FISH & RICHARDSON P.C.


                                             By: /s/ *Howard G. Pollack*
                                                 Howard G. Pollack

                                             Attorneys for Plaintiff
                                             POWER INTEGRATIONS, INC.