TERRENCE P. MCMAHON (State Bar No. 71910)
tmcmahon@mwe.com
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025-4004
Telephone:     (650) 815-7400
Facsimile:     (650) 815-7401

BLAIR M. JACOBS (admitted *pro hac vice*)
bjacobs@mwe.com
CHRISTINA ONDRICK (admitted *pro hac vice*)
condrick@mwe.com
McDERMOTT WILL & EMERY LLP
500 North Capitol Street NW
Washington, DC 20001
Telephone:     (202) 756-8000
Facsimile:     (202) 756-8087

JEREMY T. ELMAN (State Bar No. 223696)
jelman@mwe.com
McDERMOTT WILL & EMERY LLP
333 Avenue of the Americas, Suite 4500
Miami, FL 33131
Telephone:     (305) 358-3500
Facsimile:     (305) 347-6500

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC.,
FAIRCHILD SEMICONDUCTOR CORPORATION, and
SYSTEM GENERAL CORPORATION

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware Corporation, FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware Corporation, and SYSTEM GENERAL CORPORATION, a Taiwanese corporation,<br><br>Defendants. | Case No. C 09-5235-MMC<br><br>**OPPOSITION TO POWER INTEGRATIONS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND 35 U.S.C. § 285 AND FAIRCHILD'S CROSS-MOTION FOR SANCTIONS**<br><br>Date:        Jan. 25, 2013<br>Time:        9:00 a.m.<br>Location:   Courtroom 7, 19th floor<br>Before:      Hon. Judge Maxine Chesney |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................................. 2

    A.    This Motion Is Power Integrations' Latest Tactic To Avoid Litigation On
        The Merits ................................................................................................. 2

    B.    Power Integrations Is Aware That Its Rule 11 Motion Is Premature And
        Unsupportable As A Matter Of Law ......................................................... 2

    C.    Power Integrations' Latest Motion Is The Latest In A Long Line Of Failed
        Attempts To Dodge Fairchild's Infringement Allegations In This Case ............... 5

III.  ARGUMENT ...................................................................................................... 5

    A.    Legal Standards ......................................................................................... 5

        1.    Rule 11 Motions Are Disfavored, Especially As A Substitute For
            Summary Judgment ........................................................................ 5

        2.    Awarding Of Fees Under 35 U.S.C. § 285 Is Rare ........................ 7

    B.    Power Integrations' Motion Is Premature And Meritless ......................... 9

        1.    Summary Adjudication And Rule 11 Sanctions Prior To Claim
            Construction Is Improper ............................................................... 9

        2.    Fairchild's Pre-filing Investigation Was Adequate And Its
            Infringement And Claim Construction Positions Are More Than
            Reasonable ................................................................................... 12

        3.    Attorneys' Fees Are Not Warranted Under 35 U.S.C. § 285 ................... 17

    C.    Power Integrations' Rule 11 Motion Is Frivolous, Without Merit And
        Designed Solely To Harass Fairchild ...................................................... 18

        1.    Power Integrations Should Be Sanctioned Under Rule 11 ........... 18

        2.    Power Integrations Should Be Sanctioned Under The Court's
            Inherent Authority ........................................................................ 20

        3.    Power Integrations' Counsel Should Be Sanctioned Under 28
            U.S.C. § 1927 ............................................................................... 20

IV.   CONCLUSION ................................................................................................. 21

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Biomedino, LLC v. Waters Corp.*, 2005 WL 2211374 (W.D. Wash.) ..................................... 6, 12

*Brillant Instruments, Inc. v. Guidtech, Inc.*, 2012 U.S. Dist. LEXIS 140781 (N.D. Cal. September 28, 2012).................................................................................................. 8

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2006).............. 7, 17

*Centillion Data Systems, LLC v. Convergys Corp.*, 2006 U.S. Dist. LEXIS 846 (S.D. Ind. Jan. 4, 2006) .................................................................................................. 6, 9

*Chambers*, 501 U.S. at 50 ........................................................................................................ 20

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ......................................................... 5

*Dioptics Med. Prods. v. Maui Jim, Inc.*, 2006 U.S. Dist. LEXIS 10114 (N.D. Cal. Feb. 24, 2006) ................................................................................................................ 10

*Eon-Net LP v. Flagstar Bancorp. (Eon-Net I)*, 249 Fed. Appx. 189 (Fed. Cir. 2007) .................................................................................................................... passim

*Eon-Net v. Flagstar Bancorp. (Eon-Net II)*, 653 F.3d 1314 (Fed. Cir. 2011) ............................ 11

*Euclid v. Chem. Co. v. Vector Corrosion Tech., Inc.*, 2008 U.S. Dist. LEXIS 73163.............. 8, 17

*Huettig & Schromm, Inc. v. Landscape Contractors*, 790 F.2d 1421 (9th Cir. 1986)................. 19

*iLOR, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011) ................................................... 8

*In re Keegan Management Co. Securities Litigation*, 78 F.3d 431 (9th Cir. 1996)..................... 20

*Jordan v. Marin Community College Dist.*, 1993 U.S. Dist. LEXIS 16896 (N.D. Cal., Nov. 24, 1993) ................................................................................................. 19

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012)........................................ 8

*Monster Cable Prods. v. Quest Group*, 2005 U.S. Dist. LEXIS 23466 (N.D. Cal. Oct. 13, 2005)........................................................................................................... 13

*Moore v. Keegan Mgmt. Co.*, 78 F.3d 430 (9th Cir. 1996) ....................................................... 6

*Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001) ................................................... 18

*Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368 (Fed. Cir. 2005) ....................................... 8

*Polarity, Inc. v. Diversified Tech., Inc.*, 2006 U.S. Dist. LEXIS 89802 (N.D. Cal. Nov. 29, 2006) .................................................................................................... 7, 8, 17

*Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004) ............................... 5, 12

*Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012) ............... 10, 11

*Renaissance Hotel Associates v. Hotel Employees and Restaurant Employees Union*, 1993 U.S. Dist. LEXIS 2132 (N.D. Cal., Feb. 23, 1993)............................... 18

*Safe-Strap Company Inc., v. Koala Corp.*, 270 F. Supp.2d 407 (S.D.N.Y. 2003).......... 6, 7, 11, 12

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990)...................................... 6

*United States of America v. The City and County of San Francisco, et al.*, 132 F.R.D. 533 (N.D. Cal. 1990)............................................................................... 19

*Visto Corp. v. Sproquit Tech., Inc.*, 2007 U.S. Dist. LEXIS 98942 (N.D. Cal. Jan.,

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

17, 2007) ............................................................................................................ 7, 8

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. 2006) .................................................................................................................... 14

*Zaldivar v. Los Angeles*, 780 F.2d 823 (9th Cir. 1986)................................................ 6

**STATUTES**

28 U.S.C. § 1927 .................................................................................................. 20, 21

35 U.S.C. § 285 ............................................................................................... 7, 8, 17

**FEDERAL RULES**

Fed. R. Civ. P. 11 ......................................................................................... 7, 11, 18

- 2 -

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   **I.**     **INTRODUCTION**

2          Unsuccessful in its opposition to Fairchild's motion to add U.S. Patent No. 8,179,700 and

3   its motion to sever and transfer the '700 patent to Delaware, Power Integrations now files what

4   amounts to a woefully premature *de facto* motion for summary judgment in the guise of a motion

5   for sanctions and attorneys' fees.  Try as it might to paint its own claim construction and non-

6   infringement analysis as infallible gospel, Power Integrations cannot escape Fairchild's well-

7   reasoned and properly grounded claim construction and infringement positions—both of which

8   belie Power Integrations' baseless arguments and demonstrate that Power Integrations' motion is

9   not well grounded and filed for improper purposes.

10         Power Integrations' motion improperly attempts to circumvent the claim construction

11  process required by the Federal Circuit and the Patent Rules of this Court and should be

12  summarily denied.  As this Court observed at the recent hearing regarding Power Integrations'

13  motion to sever and transfer, Rule 11 motions are not the proper forum for evaluating a case on its

14  merits.  Indeed, the improper purpose behind the filing of this motion—the third filing in this

15  Court aimed at getting the '700 patent out of this case—is demonstrated by clear Federal Circuit

16  precedent instructing that it would be an abuse of discretion to grant a Rule 11 motion prior to a

17  full-fledged *Markman* process.

18         Power Integrations has been informed on multiple occasions that this motion simply

19  cannot, under any feasible standard of law, be granted prior to claim construction, expert reports

20  and other necessary proceedings relating to the meaning of disputed claim terms.  The Court has

21  informed Power Integrations that it will likely not be able to divine the ultimate outcome of the

22  litigation concerning the '700 patent at this stage of the case.  Nevertheless, Power Integrations

23  refuses to withdraw its premature motion and unreasonably multiplies the proceedings by forcing

24  Fairchild to tell Power Integrations what it already knows—that its Rule 11 motion is not

25  grounded in law.  Accordingly, Fairchild requests an award of sanctions against Power

26  Integrations for this frivolous, bad faith filing.  An appropriate sanction against Power

27  Integrations from the Court will hopefully allow the parties to move forward with the merits of

28  the litigation.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

## II. FACTUAL BACKGROUND

### A. This Motion Is Power Integrations' Latest Tactic To Avoid Litigation On The Merits

Following a recent Delaware jury verdict of infringement of System General's U.S. Patent No. 7,259,972[1] ("the '972 patent") by its LinkSwitch-II product, Power Integrations will stop at nothing to avoid a proper determination on the merits of whether the LinkSwitch-II also infringes the '700 patent. Fairchild filed a formal motion to add the '700 patent to the case on September 21, 2012. ECF No. 154. Despite having a schedule in place that would easily accommodate adding the patent to this case, Power Integrations vigorously opposed Fairchild's motion, which was ultimately granted by the Court. ECF No. 166; ECF No. 172.

Unwilling to accept defeat and wanting to prevent Fairchild/System General from telling its story of innovation at trial, Power Integrations next filed a motion to sever the '700 patent from this case and to transfer it. ECF. No. 175. Apparently pessimistic about the likelihood of success on its Motion to Sever and Transfer, Power Integrations prepared its premature and baseless Motion for Sanctions as an alternative tactic to avoid the merits. Elman Decl. Ex. A, November 15, 2012 letter from Howard G. Pollack to Terrence P. McMahon. Power Integrations' latest motion is an abuse of the legal system. It is both procedurally improper and factually flawed. Despite repeated warnings regarding the deficiencies of its Motion for Sanctions and requests that the motion be withdrawn to avoid wasted effort, Power Integrations has stubbornly pressed on.

### B. Power Integrations Is Aware That Its Rule 11 Motion Is Premature And Unsupportable As A Matter Of Law

Fairchild responded to Power Integrations' letter regarding its threatened Motion for Sanctions on December 6, 2012. Elman Decl., Ex. B, December 6, 2012 Letter from Terrence P.

---

[1] It is worth noting that Power Integrations has a long history of writing letters contending that Fairchild's infringement allegations should be withdrawn. In fact, on May 12, 2009, Power Integrations wrote Fairchild a letter contending that Fairchild's infringement allegations concerning the '780 and '972 patents were wholly unfounded, reflected an inadequate pre-filing investigation, and should be withdrawn immediately. Elman Decl. Ex. C, May 12, 2009 letter from Howard Pollack to Hopkins Guy. Power Integrations' LinkSwitch-II product was later found **to infringe the '972 patent**. Elman Decl. Ex. D. April 27, 2012 Jury Verdict in *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc*., C.A. No. 08-309-LPS (D. Del).

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

McMahon to Howard G. Pollack.  In its response letter, Fairchild explained that Power Integrations' threatened Rule 11 motion was an inappropriate and premature attempt to conduct claim construction and explained with specificity the claim construction dispute at issue. Fairchild further warned Power Integrations of its intention to cross-move for sanctions if Power Integrations persisted in filing its baseless motion.  Fairchild's response left no doubt that the parties have a legitimate disagreement on the meaning and scope of the claim term "minimum on time of the switching cycle" and that Fairchild's infringement position is supported by more than a good faith basis in light of its valid interpretation of that claim term.  To illustrate these points, Fairchild first pointed to its comprehensive infringement contentions, served on November 16, 2012—just ten days after the '700 patent was added to the case.  These contentions provide a detailed claim chart comparing the LinkSwitch-II products to the '700 patent and are more than adequate to belie any accusation by Power Integrations that Fairchild failed to conduct an adequate pre-filing investigation, particularly given Fairchild's undisputed detailed knowledge of the accused products.[2]  Second, Fairchild explained that Power Integrations' draft motion hinged on an incorrect interpretation of the "minimum on time of the switching cycle" term, created by Power Integrations' improper use of the accused product datasheet in its claim construction analysis and a product-to-product comparison, rather than a proper meaning of the disputed term determined in light of the intrinsic record.

Despite Fairchild's clear warning, Power Integrations moved forward and filed its baseless Motion for Sanctions on December 11, 2012.  ECF No. 180.  On December 21, 2012, the parties appeared before the Court for a hearing regarding Power Integrations' Motion to Sever and Transfer.  At the end of that hearing, the Court brought up Power Integrations' Motion for Sanctions, correctly characterizing it as "a motion for summary adjudication."  (Elman Decl., Ex. E, December 21, 2012 Hearing Transcript at 76:1) and further expounded on its premature nature and scant chance of success:

---

[2] Fairchild's claim chart compares the claims of the '700 patent to what are identified in the chart as the LinkSwitch-CV products.  However the "LinkSwitch-CV" products identified by Fairchild include the LinkSwitch-II products that Power Integrations identifies and discusses in its motion.

1
2
3
4

> I just want to say that at this stage of the case I don't know that I'm going to be in any kind of position to find that [Fairchild] absolutely can't win . . . . I don't know if the dispute is going to be on the construction of the term or what [Power Integrations'] product does . . . . that would be a very difficult motion to prevail on given what you know I don't know. About the case.

*Id.* at 76:4-13.

5
6
7
8
9
10
11

On December 24, 2012, in accordance with the procedural schedule, the parties exchanged claim terms requiring construction for the '700 patent. Elman Decl., Ex. F, Ex. G (emails identifying claim terms to be construed). Notably, both parties identified "minimum on time of the switching signal" as a key term requiring construction.[3] The parties' mutual identification of this term eliminates any doubt that claim construction is at the heart of the dispute raised in Power Integrations' Motion for Sanctions.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In light of the Court's comments at the hearing and Fairchild's further legal research into the issue of Rule 11 motions relating to claims of non-infringement, Fairchild sent another letter to Power Integrations on December 28, 2012, requesting that the Motion for Sanctions be withdrawn. Elman Decl., Ex. H. Fairchild's letter brought to Power Integrations' attention legal support, discussed in more detail *infra*, demonstrating that a Motion for Sanctions is an inappropriate tool to test the sufficiency of pleadings or allegations related to patent infringement. Additionally, Fairchild shared with Power Integrations, a Federal Circuit opinion, applying the law of the Ninth Circuit, holding that a district court abuses its discretion by granting a Rule 11 motion that seeks sanctions based on non-infringement prior to a fulsome Markman proceeding with a complete opportunity to be heard. *See Eon-Net LP v. Flagstar Bancorp (Eon-Net I)*, 249 F. App'x 189, 195-96 (Fed. Cir. 2007). Yet, despite this Court's discouraging remarks and legal authority that eviscerates any reasonable hope Power Integrations may have had of succeeding, Power Integrations declined Fairchild's request and forced unnecessary work relating to the opposition of this motion. Elman Decl. Ex. I, January 2, 2013 Email from Howard Pollack to Blair Jacobs.

27
28

---

[3] Specifically, Power Integrations identified "a minimum on time of the switching signal" and Fairchild identified "minimum on time of the switching signal."

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

**C.** **Power Integrations' Latest Motion Is The Latest In A Long Line Of Failed Attempts To Dodge Fairchild's Infringement Allegations In This Case**

Even before Power Integrations' recent gamesmanship regarding the '700 patent, there have been prior unsuccessful attempts to stop Fairchild's other counterclaims in this case relating primarily to the '977 patent.  Power Integrations attempted to eliminate Fairchild's '977 patent from the case on no less than <u>four</u> occasions, by: (1) seeking to move the case to Delaware (denied without hearing, ECF No. 40); (2) seeking to compel discovery not yet requested (denied without hearing with a suggestion that its position was absurd, ECF No. 62); (3) seeking to dismiss Fairchild's counterclaims as untimely (denied without hearing, ECF No. 82); and (4) seeking to sever Fairchild's counterclaims and hold a separate *Markman* hearing for Power Integrations' patents (denied without hearing, ECF No. 88).

In light of this history, Power Integrations' newest, and most egregious, motion is properly exposed for what it is—the latest in long list of unsuccessful attempts to avoid having any Fairchild or System General patent asserted against Power Integrations in this case.  Like Power Integrations' previous attempts, this latest endeavor should fail as well and Power Integrations should be deterred from future wasted efforts.

**III.** **ARGUMENT**

**A.** **Legal Standards**

**1.** **Rule 11 Motions Are Disfavored, Especially As A Substitute For Summary Judgment**

Federal Rule of Civil Procedure 11 is intended to ensure that allegations in a pleading are not wholly frivolous.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  As such, it is a weapon seldom used, and "must be read in light of concerns that it will . . . chill vigorous advocacy."  *Id.*  Under Rule 11, an attorney is only required to "conduct a reasonable inquiry into the law and facts before filing a pleading in a court and to certify that the claims contained therein are not frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose."  *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300 (Fed. Cir. 2004).  Motions for sanctions under Rule 11 thus face a heavy burden.  *See Zaldivar v. Los Angeles*, 780

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

F.2d 823, 829-832 (9th Cir. 1986).  After all, a Complaint violates Rule 11 only if it is "both baseless and made without a reasonable and competent inquiry."  *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 434 (9th Cir. 1996) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)) (emphasis added in *Moore*).  In the context of patent infringement actions, the Ninth Circuit and Federal Circuit have interpreted Rule 11 to require that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.  *Q-Pharma*, 360 F.3d at 1300-01 (affirming denial of motion for Rule 11 sanctions under Ninth Circuit law).  "'A good faith, informed comparison of the claims of a patent against the accused subject matter' constitutes a reasonable investigation."  *Biomedino, LLC v. Waters Corp.*, Case No. C05-0042L, 2005 WL 2211374 at *1 (W.D. Wash. Sept. 9. 2005) (quoting *Q-Pharma*, 360 F.3d at 1300).  Rule 11 sanctions are especially disfavored as a substitute for summary judgment or to otherwise "influence the resolution of [an] action."  *Safe-Strap Co., v. Koala Corp.*, 270 F. Supp. 2d 407, 414 (S.D.N.Y. 2003); *see also* Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments) ("Rule 11 motions ... should not be employed... to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.")

In *Safe-Strap*, the court denied defendant's Rule 11 motion to the extent that it sought dismissal because "[i]n effect, [the movant] hopes to secure summary judgment in the guise of sanctions.  [Movant's] Rule 11 motion is, *inter alia*, a transparent effort to secure a favorable *Markman* claim construction determination and to thereby influence resolution of this action."  *Id.* Indeed, Power Integrations' motion should be summarily denied because the Federal Circuit, applying Ninth Circuit law, has held that it is an abuse of discretion for a district court to grant a Rule 11 motion which turns on claim construction prior to a *Markman* proceeding.  *Eon-Net I*, 249 F. App'x at 195-96; *see also Centillion Data Sys., LLC v. Convergys Corp.*, Case No. 04-cv-0073-LJM-WTL, 2006 U.S. Dist. LEXIS 846, at *5-7 (S.D. Ind. Jan. 4, 2006) (denying motion for sanctions where the motion "asks the Court to delve into the merits of [] infringement analysis . . . [and] interpret a key claim of the [patent-in-suit] before any claim construction hearing has been held  . . .").  Granting a Rule 11 motion, such as the motion at issue here, where the movant

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   failed "to properly challenge the legal sufficiency or efficacy of this patent infringement action

2   through the channels afforded by the Federal Rules of Civil Procedure or the methods employed

3   by courts in conformity with the *Markman* decision" would unfairly prejudice the non-moving

4   party because it "allows [the movant] to receive all the benefits of a summary judgment despite

5   the fact that [it] chose to bypass the strictures associated with the summary judgment procedure."

6   *Safe- Strap*, 270 F. Supp. 2d at 413, 419, 420.

## 2.      Awarding Of Fees Under 35 U.S.C. § 285 Is Rare

8          Pursuant to 35 U.S.C. § 285, a court may award reasonable attorneys' fees to the

9   prevailing party in exceptional cases.  Because the court presumes that the patentee asserts

10  infringement in good faith, the movant bears the heavy burden of proving the exceptional nature

11  of the case by clear and convincing evidence.  *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,

12  393 F.3d 1378, 1382 (Fed. Cir. 2006).  This Court has repeatedly cautioned that:

> [t]he use of the word "exceptional" in § 285 is not to be taken lightly.  The term is
> generally defined as "forming an exception," "being out of the ordinary,"
> "uncommon" or "rare."  Congress in choosing to limit district court authority to
> award attorney's fees to "exceptional" cases has made clear that this should occur
> only in rare or extrodinary cases . . .. [T]here must be some egregious action by a
> party such that fees must be awarded to the other party in order to prevent a gross
> injustice.

*Visto Corp. v. Sproquit Tech., Inc.*, Case No. C-04-0651 EMC, 2007 U.S. Dist. LEXIS 98942, at

*5 (N.D. Cal. Jan., 17, 2007) (internal citations and quotations omitted); *see also Polarity, Inc. v.*

*Diversified Techs., Inc.*, Case No. C-06-0646 EMC, 2006 U.S. Dist. LEXIS 89802, at *3-4 (N.D.

Cal. Nov. 29, 2006).  A case may only be "deemed exceptional when there has been some

material inappropriate conduct related to the matter in litigation, such as willful infringement,

fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or

unjustified litigation conduct that violates Fed. R. Civ. P. 11 or like infractions."  *Brooks*, 393

F.3d at 1381.  "Absent misconduct in conduct of the litigation or in securing the patent, sanctions

may be imposed against the patentee only if both (1) the litigation is brought in subjective bad

faith, and (2) the litigation is objectively baseless."  *Id.*  This "exacting standard" requires the

prevailing party to show that the plaintiff's case has "no objective foundation and the plaintiff must actually know this." *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011).  The standard for demonstrating objective baselessness is a rigorous one.  *Visto*, 2007 U.S. Dist. LEXIS 98942, at *9.  Objective baselessness will not be found unless a position is "so unreasonable that no reasonable litigant could believe it would succeed."  *See iLOR*, 631 F.3d at 1378; *see also Brillant Instruments, Inc. v. Guidetech, Inc.*, Case No. C 09-5517 CW, 2012 U.S. Dist. LEXIS 140781 (N.D. Cal. September 28, 2012).  "Infringement is often difficult to determine and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith."  *Id.* at *9 (quotation omitted).  This is particularly true where, as here, issues of claim construction are involved as issues of claim construction "are often complex and the resolutions not always predictable."  *Id.* at *11.

A motion for fees is not the time to litigate a case on its merits.  Courts have routinely declined to find a case exceptional under 35 U.S.C. § 285 where a case was disposed of prior to claim construction.  *See Polarity*, 2006 U.S. Dist. LEXIS 89802, at *7-15  (declining to award fees where two terms were "likely in need of claim construction" and noting that "[f]ee litigation is not to be used as a means for a party to litigate the substantive merits of the case"); *see also Euclid v. Chem. Co. v. Vector Corrosion Tech., Inc.*, Case No. 05-cv-80, 2008 U.S. Dist. LEXIS 73163, at *17-18 (N.D. Ohio Sept. 24, 2008) (denying a motion for fees where a *Markman* hearing had not been held because "assertions and opinions" alone could not satisfy the clear and convincing evidence burden for proving a case exceptional under 35 U.S.C. § 285).  Even if the case is determined to be exceptional, a court may, in its discretion decline to award attorneys' fees.  *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012).  In determining whether to award attorneys' fees under Section 285, the court considers such factors as "the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation."  *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1380-81 (Fed. Cir. 2005).

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

**B.**     **Power Integrations' Motion Is Premature And Meritless**

   **1.**     **Summary Adjudication And Rule 11 Sanctions Prior To Claim Construction Is Improper**

As discussed above, the Federal Circuit, applying Ninth Circuit law, has held that it is an abuse of discretion to award Rule 11 sanctions on issues related to claim construction prior to a *Markman* proceeding.  This alone should cause the Court to summarily deny Power Integrations' motion.  *See Eon-Net I*, 249 F. App'x at 195-96; *see also Centillion*, 2006 U.S. Dist. LEXIS 846, at *5-7.  At this early stage in the litigation, the parties have merely exchanged claim terms to be construed and will be exchanging proposed constructions, intrinsic and extrinsic evidence on January 7, 2013. ECF No. 163 at 13 (adopted by ECF 170).  The parties both identified "minimum on time of the switching cycle" as a term requiring construction.  Elman Decl., Ex. F, Ex. G.  This indicates that both parties recognize that the meaning of this term will be disputed, thus requiring the Court's guidance on the meaning of the term.  The parties will be submitting their joint claim construction statement to the Court on January 28, 2013.  ECF No. 163 at 13 (adopted by ECF 170).  Claim construction briefing will occur in March and April of 2013, culminating in a *Markman* hearing on April 22, 2012.  *Id.; see also* ECF No. 170.  As this Court has already implicitly recognized the issues raised in this motion cannot be fairly decided without allowing the parties a full opportunity to be heard.  Elman Decl., Ex. E, Hearing Transcript at 76:4-13.

Power Integrations' Rule 11 arguments expose a critical defect in their accusations and reveal the dispute for what it truly is—a claim construction and infringement disagreement entirely outside the scope of a proper Rule 11 motion.  Power Integrations illogically argues in the alternative that "Fairchild either failed to conduct a reasonable pre-suit investigation, or it knew that Power Integrations' LinkSwitch-II products cannot infringe and brought its claim anyway."  ECF No. 180 (hereinafter "Motion"), at 11:17-19.  Power Integrations proceeds to argue that it was likely the latter and goes on to detail Fairchild's knowledge of the LinkSwitch-II products from the parties' prior litigation.  *See* Motion at 11:20-22 ("In this case, the record shows that

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1    Fairchild actually knew that the LinkSwitch-II products cannot infringe the '700 patent, and yet

2    Fairchild went ahead with its counterclaim for infringement."); *see also id.* at 11:23-12:11.

3    Fairchild's detailed prior knowledge regarding the LinkSwitch-II products from the prior

4    litigation, however, demonstrates that Fairchild conducted its pre-filing investigation with

5    detailed knowledge and documentation concerning the accused products.  This detailed

6    knowledge, of course, permitted Fairchild to reasonably conclude, based on Fairchild's

7    interpretation of the claims and knowledge of products that practice the patent, that the

8    LinkSwitch-II products infringe the '700 patent.

9        Power Integrations' pursuit of its motion based on a far-fetched theory is particularly

10   troubling in light of Fairchild's repeated explanation of the well-reasoned basis for the

11   infringement allegations.  Elman Decl., Ex. J, Ex. B. (Infringement Contentions and Dec. 6, 2012

12   letter).  This is not a scenario where a party made allegations without ever reviewing the accused

13   product.  Congress has explained that Rule 11 accusations are a serious charge against an attorney

14   and should not be used for pure gamesmanship.  *See, e.g.*, Fed. R. Civ. P. 11, advisory

15   committee's note (1993 Amendments) ("Rule 11 motions should [not] be prepared to emphasize

16   the merits of a party's position [or] . . . to intimidate an adversary into withdrawing contentions

17   that are fairly debatable.").

18       Rule 11 is simply not intended to serve as a method of expediting claim construction

19   disputes.  This holds true even if the moving party ultimately prevails in its claim construction

20   analysis, as the process of construing claim terms is often unpredictable.  Indeed, both this Court

21   and the Federal Circuit have declined to award sanctions where a party's reasonable positions are

22   ultimately deemed incorrect.  *Brooks*, 393 F.3d at 1384 ("Infringement is often difficult to

23   determine, and a patentee's ultimately incorrect view of how a court will find does not of itself

24   establish bad faith."); *Dioptics Med. Prods. v. Maui Jim, Inc*., Case No. C-05-01885, 2006 U.S.

25   Dist. LEXIS 10114, at *4 (N.D. Cal. Feb. 24, 2006) (denying sanctions and noting that the

26   "issues raised are more appropriately brought as a motion for summary judgment"); *see also*

27   *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012)

28

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1    ("Reasonable minds can differ as to claim construction positions and losing construction can

2    nevertheless be nonfrivolous.").

3        In its latest correspondence with Fairchild, Power Integrations continues to intentionally

4    confuse the issues here by contending that *Eon-Net v. Flagstar Bancorp. (Eon-Net II)*, 653 F.3d

5    1314 (Fed. Cir. 2011) and *Raylon,* provide support for its motion.  While these cases stand for the

6    proposition that in extreme circumstances after a full claim construction process a court may

7    grant a Rule 11 motion based on a claim construction position that was "so unreasonable that no

8    reasonable litigant could believe it would succeed," that is simply not the case here, as

9    demonstrated by Fairchild's support for its claim construction position outlined in Section

10   II(B)(2)(b) *infra*.  *Raylon*, 700 F.3d at 1368; *see also Eon-Net II*, 653 F.3d at 1329.  Moreover,

11   Power Integrations' reliance on these cases ignores a fundamental difference between these cases

12   and the untenable relief requested here.  Unlike the procedural posture before the court in *Raylon*

13   and *Eon-Net II*, Power Integrations' motion is fatally premature.  In both of these cases, the

14   Federal Circuit allowed sanctions for claim construction positions only after full *Markman*

15   briefing and a hearing on claim construction.  Indeed, when the movant in *Eon-Net II* previously

16   brought its motion for sanctions prior to a full claim construction proceeding, the Federal Circuit

17   vacated that decision as an abuse of discretion.  *Eon-Net I*, 249 F. App'x at 195-96; *see also Eon-*

18   *Net II*, 654 F.3d at 1319 (discussing the holding in *Eon-Net I* that "[w]ithout a full claim

19   construction analysis, including a consideration of Eon-Net's claim construction arguments, we

20   held that it was impossible to determine if Eon-Net's claim construction and infringement

21   positions were without merit").  Thus, this Court may similarly dispose of Power Integrations'

22   fatally flawed motion without hearing.

23       In addition, this Court may also dismiss Power Integrations' motion to the extent that it

24   seeks summary adjudication of Fairchild's infringement claims because it is improper to make

25   such a determination through a motion for sanctions.  Fed. R. Civ. P. 11, advisory committee's

26   note (1993 Amendments); *see also Safe-Strap*, 270 F. Supp. 2d at 413-21.  Courts must employ

27   different approaches in analyzing a motion for sanctions and a motion for summary judgment.

28   "In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of

1   an action.  Rather the court determines a collateral issue: whether the attorney has abused the

2   judicial process . . . ."  *Safe-Strap*, 270 F. Supp. 2d at 417 (internal citations and quotations

3   omitted).  "In contrast, the mission of the summary judgment procedure is to pierce the pleadings

4   and to assess the proof in order to see whether there is a genuine need for trial."  *Id.* at 418-19.

### 2. Fairchild's Pre-filing Investigation Was Adequate And Its Infringement And Claim Construction Positions Are More Than Reasonable

7   Although, as explained above, it is unnecessary for the Court to delve into the merits of

8   Power Integrations' arguments to deny its motion, Fairchild should prevail on the merits as well.

9   Fairchild had a good faith basis for its allegations that Power Integrations' LinkSwitch-II products

10  infringe the '700 patent when it filed its Amended Complaint and that good faith basis continues

11  today.  Prior to asserting the '700 patent, Fairchild's attorneys interpreted the asserted patent

12  claims in good faith and compared those claims to the LinkSwitch-II products.  Upon receiving

13  Power Integrations' motion, Fairchild's attorneys once again reviewed their claim construction

14  and infringement analysis and determined that this was nothing more than a premature dispute

15  regarding the meaning of the "minimum on time of the switching signal" term.  Fairchild remains

16  confident that its interpretation of this term and the related infringement analysis is well-founded.

17  Fairchild's analysis was more than sufficient to satisfy its obligations under Rule 11.  *See Q-*

18  *Pharma*, 360 F.3d at 1300-01; *Biomedino*, 2005 WL 2211374 at *1.

### a. Fairchild's Infringement Contentions Demonstrate Its Well-Reasoned Infringement Analysis

21  Power Integrations contends that "Fairchild's counterclaim on the '700 patent should not

22  have been filed because an adequate pre-suit investigation would have revealed that Power

23  Integrations could not possibly infringe."  Motion at 2:22-24.  Power Integrations has no

24  evidentiary basis for its speculative contention that Fairchild failed to carry out an adequate pre-

25  filing investigation.  Zero.  Indeed, Power Integrations never even sought discovery relating to the

26  pre-filing investigation before launching its baseless premature motion because it likely knew that

27  such discovery would reveal evidence helpful to Fairchild.  Instead, Power Integrations prefers

28  the tactic of launching Rule 11 allegations without having a scintilla of evidence to support the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

allegations.  The complete lack of evidentiary support for any contention relating to Fairchild's pre-filing investigation provides the Court with yet another basis for denying Power Integrations' motion without hearing.

Moreover, even if Power Integrations had obtained some evidence relating to Fairchild's pre-suit investigation, the detailed infringement contentions provided by Fairchild shortly after its amended counterclaims belie the notion that Fairchild had no good faith basis for proceeding here.  *See* Elman Decl., Ex. J, Fairchild's Infringement Contentions dated November 16, 2012.  Those contentions provide Power Integrations with Fairchild's infringement theories and demonstrate more than a good faith belief that the LinkSwitch-II product infringes one or more claims of the '700 patent.  As noted by at least one other court in the Northern District, an element-by-element comparison in infringement contentions confirm the adequacy of a pre-filing investigation:

> Monster Cable's preliminary infringement contentions, filed after the commencement of the lawsuit, reflect a product-by-product, element-by-element analysis. . . [that] support[s] Monster Cable's contention that it investigated each accused product prior to filing the lawsuit.

*Monster Cable Prods. v. Quest Group*, Case No. C-04-0005, 2005 U.S. Dist. LEXIS 23466, at *14 (N.D. Cal. Oct. 13, 2005).

Notably, Fairchild and Power Integrations cite much of the very same publicly available datasheets and information as establishing infringement/non-infringement.  The parties' competing citations to the same documents reflect consensus on the operation of the LinkSwitch-II products concerning the scope of the claims of the '700 patent.  Thus, at a minimum, a substantial dispute exists regarding the meaning of one or more terms in the claims of the '700 patent.  Such disputes are properly pursued during litigation and resolved by the Court through the *Markman* process.  Fairchild's infringement contentions, combined with its undisputed knowledge regarding the LinkSwitch-II products from previous trials, establish without a doubt that Fairchild has a good faith basis for its infringement contentions regarding the '700 patent.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1

2

**b.      Fairchild's Interpretation of "Minimum On Time Of The Switching Signal" Is Correct And Power Integrations' Position Distorts The Claim Construction Analysis**

3      While Fairchild's complete substantive analysis of the proper construction of "minimum

4  on time of the switching signal" will be provided at the appropriate time, its position is previewed

5  here to fully debunk Power Integrations' premature argument and to highlight the substantial

6  claim construction dispute.  Power Integrations' motion demonstrates fundamental flaws in

7  Power Integrations' purported non-infringement position regarding the '700 patent.  First, Power

8  Integrations' construction of the claims improperly looks to the accused products rather than to

9  the intrinsic record to interpret claim scope.  Second, and relatedly, Power Integrations' non-

10  infringement position misinterprets the meaning of "minimum on time of the switching signal" in

11  the '700 patent and wrongly characterizes what corresponds to that crucial term.

12      While it is premature to argue claim construction merits at this point, it is worth noting

13  that Power Integrations appears to be taking the meaning of "Minimum Switch ON-Time" from

14  the accused product's specification and importing that into the '700 patent in order to construe the

15  claim term "minimum on time of the switching signal."  This is completely improper, goes

16  against all tenants of claim construction, and is bad faith conduct.  *See Wilson Sporting Goods*

17  *Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006) (indicating that it is

18  improper to construe claims based on the accused products).  Armed with its self-serving

19  interpretation of "minimum on time of the switching signal," derived entirely from its own

20  product specification, Power Integrations then points to the 700 nanoseconds in the LinkSwitch-II

21  product specification, which corresponds to "Minimum Switch ON-Time" to conclude the

22  "minimum on time of the switching signal" is fixed and does not vary.

23      Power Integrations' flawed interpretation of the claim term distorts the plain and ordinary

24  meaning of the claim term provided by the '700 patent.  Wood Decl. at ¶¶ 5-6.  The 700

25  nanosecond "Minimum Switch ON-Time" identified in the LinkSwitch-II datasheet is not the

26  claimed "minimum time on time of the switching signal" in the '700 patent.  Wood Decl. at ¶ 6.

27  In contrast, the "minimum on time of the switching signal" in the '700 patent refers to the time in

28  which the pulse width is on.  Yang Decl. at ¶ 14; Wood Decl. at ¶ 6.  Moreover, even the 700

1   nanosecond minimum on time identified by Power Integrations may vary, in contradiction to

2   marketing statements in a datasheet.  It is simply too early in the case regarding the '700 patent to

3   fully assess the veracity of the datasheet.  That information will be provided during discovery.

4          As a result, properly construed, the "minimum on time of the switching signal" in the

5   claims of the '700 patent means the minimum "the time in which the pulse width of the switching

6   signal is on."  Yang Decl. at ¶ 14;  *see also* Wood Decl. at ¶ 6.  Once the pulse width is "on,"

7   there is no variation of that specific instance of on time and the pulse width is fixed for that

8   specific instance.  Yang Decl. at ¶ 16.  As one example of embodiment in the '700 patent

9   demonstrates, controlling the minimum on time of the switching signal is established by

10  controlling the time of the leading edge blanking signal.  Wood Decl. at ¶ 6; Yang at ¶ 14.

11  However, the "on time" will vary between cycles in response to a change in input voltage, thus

12  resulting in varying wave forms showing varying times during which the pulse width is on.

13  Accordingly, contrary to Power Integrations' contention that forms the entire basis for its motion,

14  the "Minimum Switch ON-Time" identified in the LinkSwitch-II datasheet is not the "minimum

15  on time of the switching signal" in the '700 patent.  Wood Decl. at ¶¶ 6-7.

16         Power Integrations' self-serving analysis is flawed because it violates the tenets of claim

17  construction and interprets "minimum on time of the switching signal" in a manner inconsistent

18  with the meaning of that term in related System General patents and the products practicing those

19  patents.  See Yang Decl. at ¶¶ 11-19.  In contrast, Fairchild's analysis takes into account the '700

20  patent, the intrinsic record, definitional guidance of "minimum on time of the switching signal"

21  provided in similar System General patents and the functionality of the practicing Fairchild

22  products.

23         Fairchild's interpretation of the claim term "minimum on time of the switching signal,"

24  the time in which the pulse width is on, is fully supported by the specification of the '700 patent.

25  *See, e.g.*, Elman Decl. Ex. K, '700 patent at Abstract ("Because the pulse width of the reflected

26  voltage is narrower at light load, the minimum on time of the switching signal helps the reflected

27  voltage detection."); *Id.* at 3:44-50 ("The minimum on time of the switching signal $V_G$ is inverse

28  proportion to the input voltage $V_{IN}$ of the power converter. The switching circuit 70 generates the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1    switching signal $V_G$ to control the switch 32 and regulate the output of the power converter in

2    response to the voltage signal $V_A$, the adaptive signal $I_B$ and the current-sense signal Vcs"); *Id.* at

3    5:8-14 ("The blanking signal $V_{BLK}$ further determines the minimum on time of the switching

4    signal $V_G$ once the switching signal $V_G$ is switched on . . . . the minimum on time of the switching

5    signal further produces a minimum pulse width of the reflected voltage $V_F$.").

6          Beyond the support for Fairchild's interpretation found in the intrinsic record of the '700

7    patent, additional support is found in related patents and the Fairchild products that practice these

8    patents.  The invention of the '700 patent resulted in the development of certain Fairchild

9    products.  Specifically, the FAN103W, FAN104W, FAN301, FAN302UL, FAN302HL, FL7730,

10   FL7732, FSEZ1307, FSEZ1307/S, FSEZ1317 and FSEZ1317WA.  Yang Decl. at ¶ 17.  Other

11   related System General patents, including U.S. Patent Nos. 7,492,613 ("the '613 patent") and

12   7,995,358 ("the '358 patent") also resulted from the same inventive work relating to solutions for

13   primary side regulation in power supplies.  Yang Decl. at ¶ 11.  Accordingly, the intended

14   meaning of the "minimum on time" term is consistently described in each of these patents.  Yang

15   Decl. at ¶¶ 18-19.

16         The specification of the '613 and '358 patents support only Fairchild's proposed

17   interpretation.  *See* Elman Decl., Ex. L, '613 patent at 2:19-23 ("The blanking signal ensures a

18   minimum on time of the control signal once the control signal is switched on.  **The minimum on**

19   **time of the control signal produces a minimum pulse width of the reflected voltage**, which

20   further facilitates the reflected voltage detection.") (emphasis added); *Id.* at Abstract ("Because

21   the pulse width of the reflected voltage is narrower at light load, a bias circuit is utilized for

22   producing a bias signal to help the reflected voltage detection"); *Id.* at 3:35-37 ("The blanking

23   signal $V_{BLK}$ ensures a minimum on time of the control signal $V_G$ once the control signal $V_G$ is

24   switched on."); Elman Decl., Ex. M, '358 patent at 4:5-14 ("The current of the current source 41

25   and the capacitance of the capacitor 47 determine the pulse width of the pulse signal.  Therefore

26   the blanking circuit 40 generates the blanking signal $V_{BLK}$ in response to enable the control signal

27   $V_G$.  The blanking signal $V_{BLK}$ ensures a minimum on time of the control signal $V_G$ once the

28   control signal $V_G$ is switched on. The minimum on time of the control signal $V_G$ further produces

1  a minimum pulse width of the flyback voltage $V_F$ which facilitates the flyback voltage

2  detection.").  Finally, Fairchild's construction is also consistent with how the embodying

3  Fairchild products actually function.  Yang Decl. at ¶ 17.

4      As explained above, Fairchild's claim interpretation is supported by both intrinsic and

5  extrinsic evidence and a person of ordinary skill in the art would agree with this interpretation.

6  Wood Decl. at ¶ 6.  At the very least, Fairchild has demonstrated that a substantial claim

7  construction dispute exists here and it is wholly premature to expedite full consideration of the

8  merits based solely on a tactical but baseless Rule 11 motion.

9  **3.    Attorneys' Fees Are Not Warranted Under 35 U.S.C. § 285**

10      If this Court declines to grant Power Integrations' invitation to summarily dispose of

11  Fairchild's infringement allegations, Power Integrations will not be the prevailing party on this

12  claim and any award of attorneys' fees under 35 U.S.C. § 285 would be premature and

13  inappropriate.  35 U.S.C. § 285.  The Court's analysis under 35 U.S.C. § 285 can end here.

14      Beyond this, awarding Power Integrations attorneys' fees under 35 U.S.C. § 285 would

15  also improper for the same reasons that a sanctions award under Rule 11 would be impermissible.

16  There is no evidence in this record—indeed, Power Integrations has not even attempted to

17  introduce such evidence—that Fairchild's infringement allegations were brought in subjective

18  bad faith or are objectively baseless.  *See Brooks*, 393 F.3d at 1381.  Under prevailing law,

19  Fairchild must be assumed to have asserted infringement of the '700 patent in good faith.  *Id.* at

20  1382.  Power Integrations has not offered a scintilla of evidence showing that Fairchild failed to

21  investigate anything—and has certainly not satisfied its clear and convincing burden.  *Id.*

22      Finally, just as with Rule 11 motions, a motion for attorneys' fees is not the proper forum

23  to delve into the merits of the case, and particularly not the merits of the case that will ultimately

24  be determined through claim construction, expert reports and other related proceedings.  Power

25  Integrations' motion must be denied on that basis as well.  *See Polarity*, 2006 U.S. Dist. LEXIS

26  89802 at *7-15; *Euclid*, 2008 U.S. Dist LEXIS 73163 at, *17-*18.

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

**C.** **Power Integrations' Rule 11 Motion Is Frivolous, Without Merit And Designed Solely To Harass Fairchild**

**1.** **Power Integrations Should Be Sanctioned Under Rule 11**

Fairchild recognizes the grave consequences of Rule 11 and does not bring motions of this nature lightly.  Unlike Power Integrations, Fairchild prefers to deal with issues on the merits rather than filing serial motions wrongly protesting every issue in a case.  Nevertheless, Power Integrations' motion crosses the line and Power Integrations knows this through direct correspondence from Fairchild.  Power Integrations filed and pursued the Motion for Sanctions for the improper purposes of increasing the cost of litigation and to harass and bully Fairchild into abandoning its good faith infringement allegations.  Under these circumstances, it is proper for the Court to sanction Power Integrations for its bad faith, frivolous filing and award Fairchild costs and attorneys' fees necessitated in responding to this unnecessary Rule 11 motion.

Rule 11 provides that "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorneys fees, incurred for the motion."  Fed. R. Civ. P. 11(c)(2). The Committee Notes confirm that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions" and that no special notice is required to seek such relief:

> As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11 -- whether the movant or the target of the motion -- reasonable expenses, including attorneys' fees, incurred in presenting or opposing the motion.

Fed. R. Civ. P. 11, advisory committee notes (1993 amendment); *see also Patelco Credit Union v. Sahni,* 262 F.3d 897, 913 (9th Cir. 2001) ("A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions.").

There is ample support in the Northern District for sanctioning parties who (like Power Integrations) file frivolous Rule 11 motions.  *See, e.g.*, *Renaissance Hotel Assocs. v. Hotel Emps. and Rest. Emps. Int'l Union*, Case No. C-91-0530, 1993 U.S. Dist. LEXIS 2132, *3-5 (N.D. Cal. Feb. 23, 1993).  This Court has sanctioned parties for moving under Rule 11, rather than address

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1   the substantive merits of an opponents' position.  *See United States v. City of San Francisco,* 132

2   F.R.D. 533, 537-38 (N.D. Cal. 1990) ("The proper means of attacking an opponent's position is

3   through cogent legal argument . . . not through Rule 11.").  Here, Power Integrations filed a Rule

4   11 motion despite knowing that Fairchild's infringement position was based on a well-reasoned

5   claim construction interpretation of the "minimum on time of the switching signal" term.  Rather

6   than arguing competing claim construction and infringement positions through *Markman* briefing

7   and summary judgment proceedings, as this Court has suggested on numerous prior occasions,

8   Power Integrations brought a premature motion in an effort to expedite the process.  Power

9   Integrations continued to pursue its unfounded motion even after Fairchild wrote informing

10  Power Integrations of Federal Circuit case law, applying the Ninth Circuit law, holding that *it*

11  *would be an abuse of discretion* for a court to grant a motion for sanctions involving claim

12  construction issues prior to a proper *Markman* procedure.  *Eon-Net I,* 249 F. App'x at 195-96.

13  Power Integrations thus knows that it cannot succeed in this motion, it is just attempting to gather

14  information through a wrongful fishing expedition.  Power Integrations' motion thus finds no

15  legitimate basis in law or fact and is sanctionable.

16      A party's "improper purpose is determined following the Court's own review of the facts

17  and the law: Where there is no legal or factual basis for a claim, improper purpose may be

18  deduced."  *Jordan v. Marin Cmty. Coll. Dist.*, Case No. C-93-0045-DLJ, 1993 U.S. Dist. LEXIS

19  16896  * 15 (N.D. Cal. Nov. 24, 1993), citing *Huettig & Schromm, Inc. v. Landscape*

20  *Contractors*, 790 F.2d 1421, 1427 (9th Cir. 1986).  Here, because Power Integrations has no legal

21  or factual basis for the Rule 11 motion and it would be an abuse of discretion to grant at this

22  point, the motion thus could have only been filed in bad faith to multiply proceedings, harass

23  Fairchild and to increase costs.  Where a Rule 11 motion is frivolous, brought in bad faith, or

24  designed to harass the opposing party, sanctions should be awarded against the moving party.  *See*

25  *City of San Francisco*, 132 F.R.D. at 537-38.

26      Accordingly, Fairchild respectfully requests that Power Integrations be sanctioned under

27  Rule 11 for filing a Rule 11 motion that it knows cannot succeed at this juncture of the litigation.

28  Rule 11 was created to act as a deterrent against wasteful and unnecessary filings that waste the

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

Court's and opposing party's time.  Power Integrations and other litigants that file serial motions, even when aware that such motions cannot be granted, can only be deterred from future abuses by sanctions from this Court.

### 2.   Power Integrations Should Be Sanctioned Under The Court's Inherent Authority

Fairchild also respectfully requests that the Court exercise its inherent authority and impose sanctions on Power Integrations for its bad-faith filing.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).  In *Chambers*, the Supreme Court made clear that that a court may levy fee-based sanctions when a party acts in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose.  *Id.* at 45-46.  Here, Power Integrations pursued a baseless Rule 11 motion in bad faith with no hope of success for no purpose other than to harass Fairchild into withdrawing its infringement claim and to unjustly increase the cost and efforts required for this litigation.  Accordingly, sanctions against Power Integrations under the Court's inherent authority are also warranted.

### 3.   Power Integrations' Counsel Should Be Sanctioned Under 28 U.S.C. § 1927

28 U.S.C. § 1927 authorizes the imposition of sanctions upon an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously."  Sanctions are warranted when there is a showing of bad faith and "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *Keegan*, 78 F.3d at 436.

As explained above, Power Integrations' counsel filed and continued to pursue this Motion for Sanctions even after Fairchild laid out its well-reasoned claim construction position and cited case law showing it would be an abuse of discretion for the Court to grant Power Integrations' premature motion prior to full resolution of claim construction and expert issues.  If that were not enough, as described in detail above, Power Integrations' counsel also declined to withdraw its Motion for Sanctions after the Court indicated that it was inclined to deny such a

premature motion.  Elman Decl., Ex. E, Hearing Transcript at 76:1-13.  Power Integrations'
unyielding pursuit of this frivolous and premature sanctions motion, even after being warned by
Fairchild of the motion's complete lack of support in the law, unreasonably and vexatiously
multiplied the proceedings and, accordingly, sanctions under 28 U.S.C. § 1927 are warranted.

## IV.    CONCLUSION

Rule 11 is intended as neither shield nor sword for litigants, but instead as a protection for
the Court and parties against the filing of frivolous claims, defenses or motions.  There are many
procedural mechanisms available to challenge a party's pleadings as deficient, either before
discovery under Rule 12 or before trial under Rule 56.  Power Integrations chose neither route,
instead filing a Rule 11 attack that finds no support in the text or spirit of the Federal Rules of
Civil Procedure.  Fairchild asks that Power Integrations' Motion for Sanctions be denied in its
entirety, and that Fairchild be awarded its costs of defending a motion that should never have
been filed.

Dated:  January 4, 2013

By:  /s/ *Jeremy T. Elman*
_____
Terrence P. McMahon
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025-4004

Blair M. Jacobs
Christina Ondrick
McDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001

Jeremy T. Elman
McDERMOTT WILL & EMERY LLP
333 Avenue of the Americas, Suite 4500
Miami, FL 33131

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC.,
FAIRCHILD SEMICONDUCTOR
CORPORATION, and
SYSTEM GENERAL CORPORATION

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on this date I electronically filed Defendants Fairchild Semiconductor

3   International, Inc., Fairchild Semiconductor Corporation, and System General Corporation's

4   Opposition to Power Integrations' Motion for Sanctions Pursuant to Rule 11 and 35 U.S.C. § 285

5   and Fairchild's Cross-Motion for Sanctions, and Declarations of Tom Yang, Jonathan R. Wood,

6   and Jeremy T. Elman in support of Fairchild's Opposition and Cross-Motion with the Clerk of the

7   Court for the United States District Court, Northern District of California, using the electronic

8   case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic

9   Filing" to the attorneys of record who have consented in writing to accept this Notice as service

10  of this document by electronic means.

11

12  Dated: January 4, 2013                          /s/ Linda Rohrer
                                                        Linda Rohrer
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK