IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>    Plaintiff,<br>  v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware Corporation, FAIRCHILD SEIMCONDUCTOR CORPORATION, a Delaware Corporation, and FAIRCHILD (TAIWAN) CORPORATION, a Taiwanese corporation,<br><br>    Defendants. | No. C 09-5235 MMC<br><br>**ORDER DENYING MOTION FOR PERMANENT INJUNCTION** |

Before the Court is the "Renewed Motion for a Permanent Injunction," filed September 18, 2014, by plaintiff Power Integrations Inc. ("Power Integrations"). Defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and Fairchild (Taiwan) Corporation (collectively "Fairchild") have filed opposition, to which Power Integrations has replied. The matter came on regularly for hearing on January 26, 2015. Howard G. Pollack and Michael R. Headley of Fish & Richardson P.C. appeared on behalf of Power Integrations. Blair M. Jacobs and Christina A. Ondrick of McDermott Will & Emery LLP appeared on behalf of Fairchild. Having considered the papers filed in support of and in opposition to the motion, and the arguments of counsel at the hearing, the Court rules as follows.

In the above-titled action, Power Integrations brings claims asserting Fairchild's infringement of two patents issued to Power Integrations, specifically, U.S. Patent No. 6,538,908 ("'908 patent") and U.S. Patent No. 6,212,079 ("'079 patent"), both said patents relating generally to power supply controllers. On March 4, 2014, a jury returned a verdict in which it found a number of Fairchild's products infringed both the '908 and '079 patents, and awarded damages in the amount of $105,000,000. (See Verdict, filed Mar. 4, 2014.) Thereafter, the Court granted Fairchild's motion for a new trial on the issue of damages. (See Order Granting in Part and Denying in Part Fairchild's Renewed Motion for Reconsideration, filed Nov. 25, 2014.)[1]

By the instant motion, Power Integrations seeks a permanent injunction prohibiting Fairchild from "making, using, selling, or offering to sell in the United States, or importing into the United States," certain enumerated integrated circuit products and variations of the listed products that are "not colorably different." (See Proposed Order at 4:6-22.) Additionally, the requested injunction would direct Fairchild to provide notice of such injunction to "all distributors, customers, or other third-parties who have ordered, received, or purchased" the enumerated parts, restrain Fairchild from inducing others to infringe the two relevant patents, and require Fairchild to include, with any enumerated or "not colorably different" product that Fairchild delivers outside the United States, a short description and copy of the order granting the permanent injunction. (See id. at 4-5.)

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." eBay v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). In particular, such "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Id.

---

[1] A status conference has been scheduled for February 17, 2015, at which time the Court will consider the parties' respective proposed schedules for the retrial.

## A. Irreparable Harm

As to the first factor, Power Integrations argues it has suffered irreparable harm as a result of Fairchild's infringement, specifically, lost sales, price erosion, loss of customer goodwill, and damage to its reputation. "[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." Apple Inc. v. Samsung Electronics Co. ("Apple II"), 695 F.3d 1370, 1374 (Fed. Cir. 2012); see Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011) (holding "eBay jettisoned the presumption of irreparable harm" after finding of infringement). Fairchild argues Power Integrations has failed to make either showing as to any of the types of harm Power Integrations claims to have suffered as a result of Fairchild's infringement.

### 1. Lost Sales

At the outset, Fairchild argues the presence of other competitors in the market precludes a finding of irreparable harm, as "one of [those] many competitors could obtain any potential lost sale even if Fairchild was not involved in the competitive sales process." (See Opp'n at 4:11-14.) Contrary to Fairchild's argument, however, the "fact that other [competitors] may be in the marketplace does not negate irreparable harm." See Robert Bosch, 659 F.3d at 1151 (internal quotation and citation omitted). Accordingly, the Court next turns to the question of nexus.

To establish the requisite causal nexus, a party seeking an injunction based on lost sales must show "the infringing feature drives consumer demand for the accused product." Apple II, 695 F.3d at 1375. "[T]he relevant inquiry focuses on the objective reasons as to why the patentee lost sales," Apple, Inc. v. Samsung Electronics Co. ("Apple I"), 678 F.3d 1314, 1328 (Fed. Cir. 2012), and "should focus on the importance of the claimed invention in the context of the accused product, and not just the importance, in general, of features of the same type as the claimed invention." Apple Inc. v. Samsung Electronics Co. ("Apple III"), 735 F.3d 1352, 1364 (Fed. Cir. 2013). A patentee need not, however, show the

3

patented feature is "the one and only reason for consumer demand." Id.

Here, Power Integrations contends two patented features drive demand for Fairchild's infringing products, specifically, as covered by the '908 patent, a controller chip with an "externally settable current limit integrated onto a single multi-function pin that also serves other purposes" (the "multi-function" feature) (see Mot. at 13:16-17), and, as covered by the '079 patent, a controller chip that provides "improved efficiency" (see id. at 12:10) by "reducing the frequency of the oscillator to reduce switching frequency for lower levels of load" ("the "frequency-reduction" feature) (see Power Integrations Opening Claim Construction Brief, filed Feb. 18, 2011, at 4:7-9).

In support thereof, Power Integrations first points to the datasheets it provides for its products,[2] in which it highlights and describes the multi-function and frequency-reduction features. Power Integrations further notes that Fairchild likewise highlights the patented features in its datasheets, and also points to Power Integrations' press releases, in which it "prominently advertises the technology." (See Mot. at 12:19-20.) Assuming the above-described evidence suggests the parties believed it to be important to incorporate the patented features into their respective products, such evidence, without more, is insufficient to establish a causal nexus, as "the relevant inquiry focuses on the objective reasons as to why the patentee lost sales, not on . . . subjective beliefs." See Apple I, 678 F.3d at 1328; see also Apple II, 695 F.3d at 1376-77 (finding defendant's description of claimed infringing feature as "core user feature," although included in developer's guide, "says too little about what draws consumers to [accused product]").

Similarly, Power Integrations' evidence of two awards recognizing the '079 technology says little, if anything, about consumer demand. One such award was given to Power Integrations' CEO, Balu Balakrishnan ("Balakrishnan"), as the "chief inventor" thereof (see Headley Decl. Ex. N) and the other, although awarded to Power Integrations, was decided by two editors of a "webzine," and was based on "performance, anticipated

---

[2]Datasheets "tell[] the customer what the product is about, what features . . . it [has], and how to use that product."  (Trial Tr. at 383:18-20.)

market success, and likely contribution to the field of analog engineering and product design" (see Headley Decl. Ex. O) (emphasis added).  In sum, such evidence, without something more, does not suffice to establish a causal nexus.  See, e.g., Apple II, 695 F.3d at 1377 (finding blogger's "predict[ion]" that patented feature "could help [accused product] win new customers" insufficient to establish causal nexus; finding statement "at best reflects an individual belief" that such feature was important to consumers).

Nor has Power Integrations, by its citation to testimony from its CEO, Balakrishnan, and its Vice President of Product Development, Michael Matthews ("Matthews"), succeeded in making the requisite additional showing.  Balakrishnan opined that, based on his "interactions" with customers, the multi-function feature and frequency-reduction feature "contributed" to the demand for Power Integrations' products (see Trial Tr. at 387:1-17, 400:21-401:2), and Matthews testified the multi-function feature was "important for" Power Integrations' customers (id. at 2773:15-23).  Neither witness, however, made clear that his opinion was based on any specified customer input as opposed to his own subjective assessment.  Although Balakrishnan also testified that "TOPSwitch-GX [which includes the frequency-reduction feature] very quickly replaced TOPSwitch-FX [which does not include the frequency-reduction feature]" (see id. at 401:5), a comparison of the datasheets for the two products shows that the TOPSwitch-GX includes a number of new features not found in the TOPSwitch-FX, many of which are highlighted (see Headley Decl. Ex. S, Ex. V), and Power Integrations makes no showing as to whether its customers' purchasing decisions were driven by the frequency-reduction feature, or only by one of the other new features.

The Court further notes that all of the above-discussed evidence, with the exception of the Fairchild datasheets, is directed to Power Integrations' products, not the infringing products.  The Federal Circuit has clarified that the nexus inquiry "should focus on the importance of the claimed invention in the context of the accused product."  See Apple III, 735 F.3d at 1364 (emphasis added).  Here, the parties' competing products are circuits, i.e. chips, which contain numerous features aside from the patented features.  Customers may buy a patentee's product because it contains a patented feature, but buy the defendant's

infringing product for entirely different reasons, e.g., additional or different features only available in the defendant's product. Power Integrations submits no evidence comparing the similarity of the parties' competing products as to any features other than the patented features, and Fairchild has introduced evidence that its accused products contain other desirable features. (See Trial Tr. at 1424:24-1425:1 (Gary Lin, General Manager of Fairchild's Power Conversion Business Unit, testifying "we do have . . . other features in the product that aggregate together that attract customers, their attention"); see also id. at 2647:8-16 (James Malackowski, Fairchild's damages expert, pointing out datasheets for Fairchild's accused products list "more than a hundred features and functions" and "the patented technology is just one").) Given the absence of a sufficient showing that consumers demand Power Integrations' products and Fairchild's products for the same reasons, Power Integrations' evidence, even if it were sufficient to show the patented features drive demand for its own products, is insufficient to establish a causal nexus between those features and demand for Fairchild's competing products.

As to demand for Fairchild's products, the only evidence Power Integrations submits, beyond subjective belief,[3] is Lin's testimony that "several customer[s]" requested lower power consumption in standby mode and that one, Foxconn, bought Fairchild's products after Fairchild included the patented frequency-reduction feature. (See id. at 1422:25-1425:8.) At the same time, however, Lin also testified, as noted above, that the accused products contain other features that "attract customers," (see id. at 1424:24-1425:1) and defendants' damages expert pointed out that the patented technology is "just one" of "more than a hundred features and functions" listed on Fairchild's datasheets (see id. at 2647:10-11). Absent evidence of the relative importance of those other features, there is insufficient evidence to show Fairchild's customers would not buy the accused product without the infringing feature. See Apple I, 678 F.3d at 1324 (holding "[s]ales lost

---

[3]In addition to the above-referenced datasheets, Power Integrations notes that Lin agreed "low-load frequency reduction is an important feature of [Fairchild's] products" (see Trial Tr. at 1425:6-7).

1  to an infringing product cannot irreparably harm a patentee if consumers buy that product
2  for reasons other than the patented feature"); Apple II, 695 F.3d at 1375 (finding insufficient
3  showing of causal nexus and noting "it may very well be that the accused product would
4  sell almost as well without incorporating the patented feature"). Moreover, even assuming,
5  arguendo, Power Integrations has made a sufficient showing that the patented feature
6  significantly influenced one customer's decision to purchase the accused product, the Court
7  finds such evidence insufficient to show the patented feature "drives consumer demand" in
8  general. (See Apple I, 678 F.3d at 1328.)

Accordingly, the Court, having considered the evidence presented, not only as separate items but in combination as well, agrees with Fairchild that Power Integrations has failed to make the requisite showing as to a causal nexus between its alleged lost sales and the infringing feature.[4]

### 2. Price Erosion

Power Integrations contends it was necessary for it to reduce the price of its own products in order to effectively compete with Fairchild's infringing products. In other words, Power Integrations contends it "reduce[d] its own prices on patented products to avoid losing even more customers." (See Mot. at 10:1-2.) As set forth above, however, Power Integrations has failed to show a causal nexus between Fairchild's sales and Fairchild's inclusion of Power Integrations' patented features in its products.

Accordingly, for the same reasons as discussed above, Power Integrations has failed to show a causal nexus between the claimed price erosion and the infringing feature.

### 3. Loss of Customer Goodwill

Power Integrations and Fairchild are competitors in a "design-wins" market. In a design-wins market, "once a supplier is chosen to meet the needs of a new product line,

---

[4] The Court notes that the trial was conducted before the Federal Circuit issued its decision in VirnetX, Inc. v. Cisco Systems, Inc., 767 F.3d 1308 (Fed. Cir. 2014). For purposes of the instant motion, Synopsys has relied exclusively on the testimony and other evidence introduced at the trial, in which Synopsys took the position that it did not have to establish the value of the patented features as distinct from the value of the smallest saleable unit, the competing chip, as a whole.

7

the supplier's component is essentially designed into the [customer's] product for its life cycle." See Broadcom Corp. v. Emulex Corp., 732 F.3d 1325, 1337 (Fed. Cir. 2013).[5]

Once again, however, the claimed loss is a lost sale, albeit a more significant sale than one made to a single customer in a consumer goods market. In other words, the difference between the two markets goes to the magnitude of the harm, and not to the type of harm incurred. See, e.g., Apple III, 735 F.3d at 1362 (distinguishing "erosion in reputation and brand distinction" from lost sales as "different type[s] of harm").[6]

Accordingly, the Court finds Power Integrations is required to show a causal nexus between the claimed loss of goodwill and the infringing features, which, as discussed above, Power Integrations has failed to do.

**4. Damage to Reputation**

Power Integrations, citing Douglas Dynamics, LLC v. Buyers Products Co., 717 F.3d 1336 (Fed. Cir. 2013), contends it has suffered irreparable harm because Fairchild's infringing conduct has "undermine[d]" its reputation as an innovator. (See Mot. at 10:15.) Douglas Dynamics, however, is distinguishable on its facts. In Douglas Dynamics, the Federal Circuit found "the record show[ed]" that the plaintiff therein "ha[d] earned itself a reputation in the market as an innovator and trusted supplier," and that the inclusion of the patented feature in products considered "less prestigious and innovative" constituted irreparable harm to such plaintiff's reputation. See Douglas Dynamics, 717 F.3d at 1344-45 (noting district court had "likened [plaintiff's] snowplow to a Mercedes Benz S550 and

---

[5] Broadcom also found, on the record presented therein, an "incumbency effect" that gave the successful supplier an advantage in future competitions as well. See id. (citing to record). Here, no such evidence has been submitted.

[6] To the extent Power Integrations, in citing Broadcom at the hearing on the motion, may have intended to suggest a causal nexus between a patented feature and demand for a competing product is not required in a design-wins market, the Court disagrees. As the Federal Circuit noted in Broadcom, "the undisputed evidence at trial linked the claimed invention of the [plaintiff's] patent to the success of the products incorporating it." Broadcom, 732 F.3d at 1337; see also Apple III, 735 F.3d at 1362 (acknowledging Broadcom's finding of irreparable harm where parties competed in design-wins market "and 'the undisputed evidence at trial linked the claimed invention of [plaintiff's] patent to the success of the products incorporating it'") (quoting Broadcom, 732 F.3d at 1337) (emphasis added).

8

[defendant's] snowplow to a Ford Taurus"). Here, by contrast, the only evidence offered as to Power Integrations' reputation is its unwillingness to license its patented technology and the receipt, by itself and Balakrishnan, respectively, of the above-referenced two awards. Even assuming, arguendo, such evidence is sufficient to support an inference as to how Power Integrations is perceived in the industry, and in particular, how it is perceived by potential customers, Power Integrations has submitted no evidence suggesting Fairchild's products are in any manner considered inferior to Power Integrations' products, or that Fairchild's inclusion of either patented feature has otherwise diminished Power Integrations' reputation.

Accordingly, Power Integrations has failed to show irreparable harm based on an "undermining" of its reputation.

### 4. Conclusion: Irreparable Harm

As set forth above, the Court finds Power Integrations has failed to show it has suffered irreparable harm as a result of Fairchild's infringement, and, accordingly, this factor weighs against issuance of a permanent injunction.

### B.  Inadequacy of Monetary Damages

In the absence of a finding of irreparable injury, there can be no finding that legal remedies are "inadequate to compensate for that injury," see eBay, 547 U.S. at 391 (emphasis added), and, accordingly, the second eBay factor likewise weighs against issuance of a permanent injunction.

### C.  Remaining eBay Factors

Because the Court finds Power Integrations has failed to meet its burden as to the first two eBay factors, the Court does not address herein the remaining eBay factors. See, e.g., Malibu Boats, LLC v. Nautical Boat Co., 997 F. Supp. 2d 866, 888 n.9 (E.D. Tenn. 2014) (citing Polymer Techs., Inc. v. Bridwell, 103 F.3d 970 (Fed. Cir. 1996)).

//
//
//

**CONCLUSION**

For the reasons stated above, the instant motion for a permanent injunction is hereby DENIED, without prejudice to Power Integrations' filing a renewed motion after the retrial on the issue of damages.[7]

**IT IS SO ORDERED.**

Dated: February 12, 2015

MAXINE M. CHESNEY
United States District Judge

---

[7] As noted above, the trial was conducted before the Federal Circuit's decision in VirnetX, 767 F.3d 1308.