1   Frank E. Scherkenbach (CA #142549/scherkenbach@fr.com)
    FISH & RICHARDSON P.C.
2   One Marina Park Drive
    Boston, MA 02110-2804
3   Telephone: (617) 542-5070
    Facsimile:  (617) 542-8906
4
5   Howard G. Pollack (CA #162897/pollack@fr.com)
    Michael R. Headley (CA #220834/headley@fr.com)
    FISH & RICHARDSON P.C.
6   500 Arguello Street, Suite 500
    Redwood City, CA 94063
7   Telephone:  (650) 839-5070
    Facsimile:  (650) 839-5071
8
    Attorneys for Plaintiff
9   POWER INTEGRATIONS, INC.

10                  UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                     (SAN FRANCISCO DIVISION)

13

14
    POWER INTEGRATIONS, INC.,            Case No. 09-cv-05235-MMC
15  a Delaware corporation,

16              Plaintiff,               **POWER INTEGRATIONS' TRIAL
                                         BRIEF RE EMVR**
17         v.

18                                          Date: December 7, 2015
    FAIRCHILD SEMICONDUCTOR                 Time: 9:00 a.m.
19  INTERNATIONAL, INC., a Delaware         Location: Courtroom 7, 19th Floor
    corporation, FAIRCHILD SEMICONDUCTOR    Before: Hon. Maxine M. Chesney
20  CORPORATION, a Delaware corporation, and
    FAIRCHILD (TAIWAN) CORPORATION, a
21  Taiwanese corporation,

22              Defendants.

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page No.</u>

3      A.   EMVR Is an Issue of Fact. ....................................................... 1

4          1.   EMVR Is Generally for the Jury. ...................................... 1

5          2.   Damages Are Generally for the Jury. ................................ 2

6          3.   Facts Relied Upon by an Expert Are Generally for the Jury. .................. 4

7      B.   The EMVR Standard Is Disjunctive: EMVR Applies Where the
           Patented Feature Creates the Basis for Customer Demand *or*
8          Substantially Creates the Value of the Component Parts. ................... 6

9          1.   The Federal Circuit's Current Formulation of the EMVR
               Standard Is Clearly Disjunctive. ..................................... 6
10
           2.   A Royalty on an Entire Infringing Product Is Also
11             Appropriate in Other Circumstances. ................................. 6

12     C.   EMVR Does Not Invoke Special Exclusions on Types of
           Evidence. ................................................................ 9
13
       D.   If Apportionment Is Required, the Jury Can Do It. ......................... 14
14
       E.   Exclusion of Dr. Putnam's EMVR Testimony in the Middle of
15         Power Integrations' Case Would Be Procedurally Improper. ................. 15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,*
738 F.3d 960 (9th Cir. 2013).......................................................................... 4

*Apple v. Motorola,*
757 F.3d 1286 (Fed. Cir. 2014)............................................................. *passim*

*Astrazeneca AB v. Apotex Corp.,*
782 F.3d 1324 (Fed. Cir. 2015)................................................................ 7, 8

*Avocent Redmond Corp. v. Rose Electronics,*
2013 WL 1855847 (W.D. Wa. 2013)..................................................... 12, 13

*Badger v. Wal-Mart Stores, Inc.,*
2013 U.S. Dist. LEXIS 91216 (D. Nev. June 28, 2013) .......................... 15

*Bose Corp. v. JBL, Inc.,*
274 F.3d 1354 (Fed. Cir. 2001).................................................................. 11

*City of Pomona v. SQM N. Am. Corp.,*
750 F.3d 1036 (9th Cir. Cal. 2014) ............................................................. 4

*DataQuill Ltd. v. High Tech Comp. Corp.,*
887 F.Supp.2d 999 (S.D. Cal. 2011) ........................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.,*
509 U.S. 579 (1993).............................................................................. *passim*

*Electro-Mechanical Corp. v. Power Distribution Products, Inc.,*
926 F.Supp.2d 822 (W.D. Va. 2013) ........................................................... 2

*Ericsson, Inc. v. D-Link Sys.,*
773 F.3d 1201 (Fed. Cir. 2014)........................................................ 6, 7, 14

*Fonar Corp. v. General Elec. Co.,*
107 F.3d 1543 (Fed. Cir. 1997)........................................................... 1, 10

*General Elec. Co. v. Joiner,*
522 U.S. 136 (2007)................................................................................. 4, 5

*Humetrix, Inc., v. Gemplus S.C.A.,*
268 F.3d 910 (9th Cir. 2001) ...................................................................... 5

*i4i Ltd. P'Ship. v. Microsoft Corp.,*
598 F.3d 831 (Fed. Cir. 2010)........................................................ 2, 3, 12

ii

*Info–Hold, Inc. v. Muzak LLC*,
    783 F.3d 1365 (Fed. Cir. 2015) ................................................................. 14

*Intellectual Ventures I LLC v. Symantec Corp.*,
    2015 WL 307572 (D. Del. 2015) ............................................................ 1, 14

*Internet Machines LLC v. Alienware Corporation*,
    2013 WL 4056282 (E.D. Tx. 2013) ............................................................. 13

*Interwoven, Inc. v. Vertical Computer Sys.*,
    No. CV 10-04645 RS, 2013 WL 3786633 (N.D. Cal. July 18, 2013) ........................ 5

*LaserDynamics v. Quanta Computer*,
    694 F.3d 51 (2012) ............................................................... 2, 11, 12, 13

*Lucent v. Gateway*,
    580 F.3d 1301 (2009) ............................................................. 3, 7, 11, 12

*Marine Polymer Technologies, Inc. v. HemCon, Inc.*,
    672 F.3d 1350 (Fed. Cir. 2012) (*en banc*) ................................................ 10

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
    No. CV-97-2271-RHW, 2002 WL 34714563 (S.D. Cal. Jan. 14, 2002) ......................... 5

*Meyer Intellectual Properties v. Bodum*,
    690 F.3d 1354 (2012) ......................................................................... 15

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003) ............................................................... 2

*Microsoft Corp. v. Motorola, Inc.*,
    904 F.Supp.2d 1109 (W.D. Wa. 2012) .......................................................... 7

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ............................................................... 4, 5

*Saguaro Med. Associates, P.C. v. Banner Health*,
    No. CV081386PHXDGC, 2010 WL 466048 (D. Ariz. Feb. 10, 2010) ............................. 5

*Schudel v. GE*,
    120 F.3d 991 (9th Cir. 1997) ................................................................ 15

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed.Cir.2013) ................................................................. 6

*Tec Air, Inc. v. Denso Mfg. Michigan Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999) ............................................................ 1, 10

*Trekeight, LLC v. Symantec Corp.*,
    No. 04-CV-1479, 2006 WL 5201349, at *5 (S.D. Cal. May 23, 2006) ......................... 5

*Uniloc USA, Inc. v. Microsoft Corp.,*
    632 F.3d 1292 (Fed. Cir. 2011) ..................................................................... 6, 12

*Unisplay v. American Electronic Sign Co., Inc.,*
    69 F.3d 512 (1995) .......................................................................................... 3, 4

*United States v. Chischilly,*
    30 F.3d 1144 (9th Cir. 1994), overruled on other grounds by *United States v.*
    *Preston,* 751 F.3d 1008 (9th Cir. 2014) ............................................................. 4

*United States v. Newmont USA Ltd.,*
    No. CV-05-020-JLQ, 2007 WL 4856859 (E.D. Wash. Nov. 16, 2007) .................... 4

*United States v. Sandoval-Mendoza,*
    472 F.3d 645 (9th Cir. 2006) .................................................................................. 4

*Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ. v. Varian Med. Sys.,*
    561 Fed. Appx. 934 (Fed. Cir. 2014) ................................................................. 8, 9

*Veracode, Inc. v. Appthority, Inc.,*
    ___ F. Supp. 3d.___, 2015 WL 5749435 (D. Del. 2015) ................................... 11, 12

*Versata Software, Inc. v. SAP Am., Inc.,*
    717 F.3d 1255 (Fed.Cir.2013) ................................................................................. 6

*VirnetX v. Cisco Systems,*
    767 F.3d 1308 (2014) .................................................................................... 6, 11

**Statutes**

35 U.S.C. § 284 ......................................................................................................... 14

Fed. R. Civ. P. 50(a)(1) ............................................................................................ 16

Fed. R. Evid. 702 ........................................................................................................ 4

Fed. R. Evid. 703 ...................................................................................................... 15

iv

Power Integrations submits this brief in advance of trial to set forth the applicable law governing EMVR, including questions raised by the Court at recent hearings (such as whether EMVR is an issue of fact, what the standard of EMVR is, and what types of evidence suffice).

### A.     EMVR Is an Issue of Fact.

Whether EMVR applies is a question of fact that can only be decided as a matter of law when there are no genuine disputes (like any other factual issue).

### 1.     EMVR Is Generally for the Jury.

Defendants have cited no case holding that EMVR is a question of law.  None exists.  To the contrary, the applicability of EMVR is just an ordinary issue of fact, like most damages issues.  Indeed, it is largely an issue of causation, something juries routinely decide.

Thus, in *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353 (Fed. Cir. 1999), the Federal Circuit affirmed the district court's denial of JMOL where the jury based damages on EMVR:  "From this evidence, the jury could have reasonably concluded that the demand for the entire assembly depended on the patented invention.  Thus, the jury properly applied the entire market value rule."  *Id.*  at 1362; *accord*, *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1552 (Fed. Cir. 1997) (affirming denial of JMOL; application of EMVR "is permitted when the patented feature is the basis for customer demand for the entire machine….  There was evidence from which the jury could have concluded that was the case here.").

That juries are generally tasked with deciding whether EMVR applies is confirmed by this district's model jury instructions:  "[I]n a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue may be the value of the whole product….  The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.  When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features."  N.D. Cal. Model Patent Jury Instr. B.5.7.

Other district courts have also reached the same conclusion recently.  For example, in *Intellectual Ventures I LLC v. Symantec Corp.*, 2015 WL 307572, *1 (D. Del. 2015), Judge Stark rejected defendant's *in limine* and *Daubert* motions, and instead instructed the jury (a) to

1

determine whether EMVR applies and (b) in the alternative, to apportion.  And in *Electro-Mechanical Corp. v. Power Distribution Products, Inc.*, 926 F.Supp.2d 822, 840 (W.D. Va. 2013), the district court considered *LaserDynamics* and rejected defendant's motions *in limine* and for summary judgment, finding the issue was for the jury: "I find that EMC has produced sufficient evidence for the jury to consider application of the entire market value rule. The facts on this issue are clearly disputed, and both sides interpret the evidence quite differently.  The jury, as fact-finder, will have to decide whether EMC has met its burden of proving the required elements for invocation of the entire market value rule.  Neither exclusion of Dr. Graham's testimony nor summary judgment is warranted based on this issue."

### 2.      Damages Are Generally for the Jury.

As the Court is aware, the Federal Circuit has announced a series of cases in recent years curbing excessive damages in certain situations, particularly in non-practicing entity cases, which is obviously not the situation here.  However, the pendulum now appears to be swinging back, as the most recent cases caution district courts not to substitute their view of the facts for the jury's on patent damages.

For example, in *Apple v. Motorola*, 757 F.3d 1286 (Fed. Cir. 2014), the Federal Circuit reversed the exclusion of testimony by plaintiff's damages expert: "A judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another.  These tasks are solely reserved for the fact finder." *Id.* at 1314.  The Federal Circuit further emphasized that judicial restraint is "particularly essential in the context of patent damages" and that "questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are 'for the jury.'" *Id.* at 1315 (citing *i4i Ltd. P'Ship. v. Microsoft Corp.*, 598 F.3d 831 at 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility.") and *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003)).

1    Moreover, the Federal Circuit reiterated in one of the more recent Apple cases that

2  concerns about bias of evidence considered by an expert[1] go to weight, not admissibility:  "In

3  particular, the district court expressed concern that Dr. Polish's technical advice [to Apple's

4  damages expert Napper] was incurably biased because he was hired by Apple. . . . While it may be

5  true that the potential for bias is an inherent concern with respect to all hired experts, this concern

6  is addressed by the weight given to the expert's testimony, not its admissibility."  757 F.3d at

7  1321. The Federal Circuit also "recognized that estimating a 'reasonable royalty' is not an exact

8  science.  As such, the record may support a range of 'reasonable' royalties, rather than a single

9  value.  Likewise, there may be more than one reliable method for estimating a reasonable royalty."

10  *Id.* at 1315.

11    The *Apple v. Motorola* case thus required reversal because the district court violated these

12  principles: "Whether Napper's testimony was the product of reliable principles and methods is the

13  focus of admissibility; whether the testimony produced a correct degree of estimation of the value

14  of the '949 patent is a factual consideration reserved for the fact finder.  Here, the district court

15  resolved admissibility based upon its own view on the correct estimate of value for the '949 patent,

16  a question that should have been reserved for the jury."  *Id.* at 1320.

17    By contrast, the Federal Circuit affirmed the district court's admission of expert damages

18  testimony over objection in *i4i*:  "While the data were certainly imperfect, and more (or different)

19  data might have resulted in a 'better' or more 'accurate' estimate in the absolute sense, it is not the

20  district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's

21  testimony. . . . Questions about what facts are most relevant or reliable to calculating a reasonable

22  royalty are for the jury."  598 F.3d 831 at 856.  The Federal Circuit has repeatedly recognized that

23  "any reasonable royalty analysis necessarily involves an element of approximation, and

24  uncertainty."  *Id.* at 857 (citing *Lucent v. Gateway*, 580 F.3d 1301, 1325 (2009), and *Unisplay v.*

25  *American Electronic Sign Co., Inc.*, 69 F.3d 512, 517 (1995)).  Thus, the court concluded, "[g]iven

26  the *intensely factual nature of a damages determination* and our deferential standard of review, we

27

28    [1] This is an issue Fairchild has raised with respect to Dr. Putnam's reliance on Power
Integrations' fact witnesses for a host of contested factual matters.

3

1  are not in a position to second-guess or substitute our judgment for the jury's." *Id.* at 858

2  (emphasis added).

### 3.    Facts Relied Upon by an Expert Are Generally for the Jury.

4  The Federal Circuit applies regional circuit law to the question of admissibility. *Apple v.*

5  *Motorola,* 757 F.3d at 1315. In the Ninth Circuit, the Rule 702/*Daubert* standard is viewed as

6  "liberal" in favor of admissibility. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir.

7  Cal. 2014). "[T]he inquiry is a flexible one. Shaky but admissible evidence is to be attacked by

8  cross examination, contrary evidence, and attention to the burden of proof, not

9  exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27, 2010)

10 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)); *see also Alaska Rent-A-*

11 *Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Where the proponent of the

12 evidence "was careful to frame the evidence properly," the opponent "was adequately equipped to

13 contest its validity," and the court provided oversight, the evidence was found admissible. *United*

14 *States v. Chischilly*, 30 F.3d 1144 (9th Cir. 1994), overruled on other grounds by *United States v.*

15 *Preston,* 751 F.3d 1008 (9th Cir. 2014). "The *Chischilly* analysis also demonstrates how trial

16 courts ought to treat conflicting expert testimony. A factual dispute is best settled by a battle of the

17 experts before the fact finder, not by judicial fiat." *City of Pomona*, 750 F.3d at 1049; *see also,*

18 *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006).

19 "[A] review of the case law after *Daubert* shows that the rejection of expert testimony is

20 the exception rather than the rule." *United States v. Newmont USA Ltd.,* No. CV-05-020-JLQ,

21 2007 WL 4856859, at *2 (E.D. Wash. Nov. 16, 2007) (citation omitted). "As a general rule, the

22 factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and

23 it is up to the opposing party to examine the factual basis for the opinion in cross-examination.

24 Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the

25 finder of fact is exclusion justified under Fed. R. Evid. 702." *Id.*; *see also General Elec. Co. v.*

26 *Joiner*, 522 U.S. 136, 146 (2007) ("Only where expert opinion is 'connected to existing data only

27 by the ipse dixit of the expert' may there be 'too great an analytical gap between the data and the

28

4

1  opinion preferred' to support inclusion of the testimony."). Apart from such extreme scenarios,

2  "[t]rained experts commonly extrapolate from existing data." *General Elec.*, 522 U.S. at 146.

3      "[E]xpert testimony need only be relevant, and need not establish every element that the

4  plaintiff must prove, in order to be admissible." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir.

5  2010). An opinion is not inadmissible even if it "omitted some significant facts," as long as it

6  relied on sufficient data. Such errors would "go to the weight, not the admissibility." *Saguaro*

7  *Med. Associates, P.C. v. Banner Health*, No. CV081386PHXDGC, 2010 WL 466048, at *3-4 (D.

8  Ariz. Feb. 10, 2010); *Trekeight, LLC v. Symantec Corp.*, No. 04-CV-1479 H (BLM), 2006 WL

9  5201349, at *5 (S.D. Cal. May 23, 2006) ("flaws, errors, and unfounded assumptions" are not

10 "sufficient grounds to conclude that [the expert's] proposed testimony is inadmissible."); *Med.*

11 *Instrumentation & Diagnostics Corp. v. Elekta AB*, No. CV-97-2271-RHW, 2002 WL 34714563,

12 at *7-8 (S.D. Cal. Jan. 14, 2002) ("Any perceived weakness with Mr. Degan's testimony is left to

13 the adversarial process."); *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001)

14 (proper challenge to the accuracy of an expert's testimony is "not exclusion of the testimony, but,

15 rather, refutation of it by cross-examination and by the testimony of its own expert witnesses.").

16      Thus, courts in Ninth Circuit have been liberal in permitting evidence of EMVR to go to

17 the jury. For example, the Southern District permitted reliance on articles showing that the

18 patented feature was important to the defendant's ability to compete in the market. *See, e.g.,*

19 *DataQuill Ltd. v. High Tech Comp. Corp.*, 887 F. Supp. 2d 999, 1027–28 (S.D. Cal. 2011). And

20 this district permitted reliance on marketing materials and conversations: "While Gemini's

21 reliance on marketing materials and conversations with Valdetaro to support the conclusion that

22 the whole of Interwoven's products use the patented technology is relatively weak, it is sufficient

23 to present a question of fact as to the extent of the use of patented features. A jury must find

24 whether the patented feature drove consumer demand such that application of the entire market

25 value is appropriate." *Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-04645 RS, 2013 WL

26 3786633, at *10 (N.D. Cal. July 18, 2013).

27

28

5

1

   **B.     The EMVR Standard Is Disjunctive: EMVR Applies Where the Patented
            Feature Creates the Basis for Customer Demand *or* Substantially Creates the
            Value of the Component Parts.**

2

   **1.     The Federal Circuit's Current Formulation of the EMVR Standard Is
            Clearly Disjunctive.**

3

4

   Notwithstanding one district court cited by defendants, recent Federal Circuit cases have

5

stated the EMVR test in the disjunctive.  In *VirnetX*, the Federal Circuit clearly stated "we recently

6

reaffirmed that '[a] patentee may assess damages based on the entire market value of the accused

7

product only where the patented feature creates the basis for customer demand or substantially

8

creates the value of the component parts.'"  *VirnetX v. Cisco Systems*, 767 F.3d 1308, 1326 (2014)

9

(emphasis omitted, quoting *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268

10

(Fed.Cir.2013) ("A patentee may assess damages based on the entire market value of the accused

11

product only where the patented feature creates the basis for customer demand or substantially

12

creates the value of the component parts.") and *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d

13

1365, 1383 (Fed.Cir.2013) ("A patentee may 'assess damages based on the entire market value of

14

the accused product only where the patented feature creates the 'basis for customer demand' or

15

'substantially create[s] the value of the component parts.'"")); *see also, Uniloc USA, Inc. v.

16

*Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("The entire market value rule allows a

17

patentee to assess damages based on the entire market value of the accused product only where the

18

patented feature creates the "basis for customer demand" or "substantially create[s] the value of

19

the component parts.")

20

   **2.     A Royalty on an Entire Infringing Product Is Also Appropriate in
            Other Circumstances.**

21

22

   Far from being limited to one single fact scenario as Fairchild argues, EMVR is actually

23

much more nuanced and flexible, as the Federal Circuit recently explained in *Ericsson, Inc. v. D-

24

Link Sys.*, 773 F.3d 1201 (Fed. Cir. 2014): "[W]here multi-component products are involved, the

25

governing rule is that the *ultimate combination of royalty base and royalty rate must reflect the*

26

*value attributable to the infringing features* of the product, and no more."  *Id.* at 1226 (emphasis

27

added).  The Federal Circuit further emphasized that there are many ways an economist might help

28

the jury isolate the value of infringing features:

6

1

2

3

4

5

6

> [A] jury must ultimately 'apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features' using 'reliable and tangible' evidence. . . . Logically, an economist could do this in various ways—by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.  The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.

7   *Id.* (affirming district court exercising its discretion to admit evidence, citation omitted); *accord*,

8   *Microsoft Corp. v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119 (W.D. Wa. 2012) (declining "to

9   adopt a per se rule that a royalty rate may never be applied to the entire product price without

10  satisfaction of the entire market value rule" and quoting *Lucent v. Gateway,* 580 F.3d 1301, 1338–

11  39 (2009): "the base used in a running royalty calculation can always be the value of the entire

12  commercial embodiment, as long as the magnitude of the rate is within an acceptable range (as

13  determined by the evidence.")).

14      Here, Dr. Putnam isolated the incremental value of the infringing technology by comparing

15  the real word in which defendants infringed versus a hypothetical world in which defendants

16  offered *noninfringing* products.  Critically, he did *not* compare the real world to a hypothetical

17  world in which defendants *withdrew* from the market.  In this way, he isolated the value of

18  *infringement*.

19      In addition, one notable situation where a royalty on an entire infringing product is

20  appropriate, *apart from* EMVR, is where the entire product is within the scope of the claims, even

21  if the claim and infringing product include conventional elements.  Such was the case in

22  *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) (affirming damages

23  following bench trial).  The case is interesting because the claimed drug predated the asserted

24  patent; the novelty was how the drug was packaged and delivered.  Nonetheless, the claims

25  included as an element the pre-existing drug as well as the package and, since the package made

26  the overall product commercially viable, the district court properly applied a royalty to the entire

27  infringing product:

28

7

1    While the entire market value rule does not apply to this case, the damages
2    determination nonetheless requires a related inquiry. When a patent covers the infringing
3    product as a whole, and the claims recite both conventional elements and unconventional
     elements, the court must determine how to account for the relative value of the patentee's
4    invention in comparison to the value of the conventional elements recited in the claim,
     standing alone.

5                                        * * *

6    The district court addressed, and answered, that question. The court rejected
7    Apotex's proposition that the patented formulation constituted only a minor, incremental
     improvement over the active ingredient. The court found instead that the formulation
8    "substantially create[d] the value" of the entire omeprazole product. That was because,
     despite the effectiveness of omeprazole in reducing the production of gastric acid, it is
9    notoriously difficult to formulate. . . . In order to deliver the active ingredient to the part of
     the human body where it can take effect, scientists had to develop a formulation that would
10   allow the drug to pass through the stomach and be absorbed by the small intestine, while
     ensuring adequate shelf life in a drug that is sensitive to heat, moisture, organic solvents,
11   and light.

12                                       * * *

     Accordingly, the district court permissibly found no reason to exclude the value of
13   the active ingredient when calculating damages in this case.

14   *Id.* at 1339-40.

15   In reaching this conclusion, the Federal Circuit made four other key points: (1) Defendant

16   was incorrect that "the district court should have calculated damages by apportioning the relative

17   contribution of value between the active ingredient and the "inventive element" of the patents, i.e.,

18   the subcoating." *Id.* at 1337; (2) "[W]hile it is important to guard against compensation for more

19   than the added value attributable to an invention, it is improper to assume that a conventional

20   element cannot be rendered more valuable by its use in combination with an invention." *Id.* at

21   1338; (3) "The standard *Georgia-Pacific* reasonable royalty analysis takes account of the

22   importance of the inventive contribution in determining the royalty rate that would have emerged

23   from the hypothetical negotiation." *Id.* and (4) "It is not the case that the value of all conventional

24   elements must be subtracted from the value of the patented invention as a whole when assessing

25   damages." *Id.* at 1339.

26   Similarly, in *Varian*, the Federal Circuit affirmed a jury's damages award, holding that a

27   pre-existing beam generator was properly included in the royalty base because it was included in

28

                                          8

the claim: "Claim 38 …uses open-ended language and explicitly includes the beam generator as a claimed component of the apparatus.  As such, Varian's argument fails because Pitt is not attempting to include the value of unpatented features within its royalty base.  The beam generator is incorporated into the linear accelerator in claim 38; it is the combination apparatus that is claimed."  *Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ. v. Varian Med. Sys.*, 561 Fed. Appx. 934, 947 (Fed. Cir. 2014) (non-precedential).  The court held that a jury could account for inclusion of the conventional element by considering and applying the *Georgia-Pacific* factors to reward the inventor only for the value of the invention.  *Id.* at 947-48.

By contrast, in *Apple v. Motorola,* the Federal Circuit reversed exclusion of a damages expert because the district court failed to "consider[] the full scope of infringement" and instead erroneously "focused on individual claim limitations in isolation."  757 F.3d at 1317-20 (the district court focused on whether the expert had reliably valued a single claim limitation, the "vertical scrolling feature," rather than the claimed combination as a whole).

Here, the infringed claims are directed to a switching regulator with a power switch and control circuit, not just Power Integrations' patented improvements thereto.  *E.g.*, '079 patent, claims 31, 34, 38, and 42.  Thus, the *entire* accused products – the chips as a whole – are infringing and may be included in the royalty base even without reliance on EMVR.

## C.    EMVR Does Not Invoke Special Exclusions on Types of Evidence.

As the Court observed, defendant's case quotation regarding "anecdotal" evidence was not real.  [Dkt. No. 746 at 73, 75.]  In fact, Power Integrations has not located any EMVR case setting forth a prohibition on anecdotal evidence.  In addition, contrary to defendant's representation, no cases establish a "heightened" evidentiary standard for EMVR either.  To the contrary, ordinary evidentiary principles apply.  Thus, Power Integrations is free to prove its case through circumstantial evidence, and it is for the jury to draw reasonable inferences.  Ninth Circuit Model Jury Instruction No. 1.9 ("The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.")

9

1   Thus, in *Marine Polymer Technologies, Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1360 (Fed.

2   Cir. 2012) (*en banc*), the Federal Circuit applied a substantial evidence standard and affirmed a

3   $29 million jury verdict based on EMVR:  "The district court correctly found that the record

4   contains substantial evidence to support a damages award based on the entire market value of

5   HemCon's infringing products, including 'evidence pertaining to the importance of biocompatible

6   p-GlcNAc in HemCon's products and its significance for market demand.'. . .   Ultimately, the jury

7   was entitled to evaluate this conflicting evidence and credit the testimony of Marine Polymer's

8   expert over that of HemCon, as it did.  The jury also heard testimony from witnesses for both

9   parties, including HemCon's own president, describing the claimed p-GlcNAc as 'critical' to the

10   core hemostatic function of the accused products.  In sum, based on the evidence of record, the

11   jury's damages award was supported by substantial evidence.  In such cases, we may not

12   'substitute [our] choice for that of the jury.'"

13   In *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999), the

14   Federal Circuit held "the jury could have reasonably concluded that the demand for the entire

15   assembly depended on the patented invention" from the record evidence, which included:

16   "[Defendant] Denso's damage expert testified that the motors used with the radiator and condenser

17   assemblies required fans.  Denso did not sell these assemblies without fans.  Denso's internal

18   documents stress, moreover, that the performance and price of the entire system were paramount to

19   its customers.  This evidence amply supports the finding that the assemblies were a single

20   functional unit.  In addition, the evidence shows that customers wanted fans that were balanced to

21   a certain specification and once Denso abandoned the patented method, it could not meet the 2.0

22   gm-cm balance specification.  Denso argues that its customers did not care how the fans in the

23   assemblies were balanced.  However, after Denso changed its specification, one customer

24   complained and required Denso to rebalance the fans."  In this way, the Federal Circuit applied

25   ordinary deferential review to the jury's fact findings, with no mention of a "heightened" standard.

26   Similarly, in *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1552 (Fed. Cir. 1997), the

27   Federal Circuit again applied a deferential substantial evidence standard and held that "[t]here was

28   evidence from which the jury could have concluded" that the patented feature was the basis for

10

1   demand: "GE's own technical literature of record emphasized the MAO feature.  A brochure for

2   GE's Signa machine highlighted MAO in 1987, stating that '[m]ulti-slice, multi-angle capabilities

3   offer direct acquisition of multiple view angles in one acquisition.'  Several other brochures of GE

4   machines also identified the MAO feature.  One GE brochure, entitled 'Multi-angle MR imaging,'

5   states that:  'A recent advance at GE Medical Systems, however, is helping to enhance efficiency

6   and patient throughput.  Multi-angle imaging, featured on all Signa® systems, allows a single scan

7   to be graphically prescribed with each slice—or group of slices—acquired at a different angle.'"

8       Likewise, in *Bose Corp. v. JBL, Inc.,* 274 F.3d 1354, 1361 (Fed. Cir. 2001), the Federal

9   Circuit applied a substantial evidence standard and affirmed application of EMVR.  Similar to this

10  case, there was evidence that "the invention of the '721 patent improved the performance of the

11  loudspeakers and contributed substantially to the increased demand for the products in which it

12  was incorporated" and that "the invention of the [patent-in-suit] was integral to the overall

13  performance of its [embodying product]."  *Id.*  Also similar to this case, "Bose presented evidence

14  detailing its efforts to market the benefits of its loudspeakers using the invention of the '721 patent

15  and provided testimony on its increase in sales in the year following the introduction of its

16  speakers containing the invention."  *Id.*  Finally, and also similar to this case, one of the

17  defendant's "marketing executive[s] also acknowledged that [the patented feature] was a

18  prerequisite for [the defendant's] decision to go forward with manufacturing and selling certain

19  [infringing products]."  *Id.*

20      More recently, district courts have likewise applied a deferential, substantial evidence

21  standard to juries' EMVR decisions.  In *Veracode, Inc. v. Appthority, Inc.,* ___ F. Supp. 3d.___,

22  2015 WL 5749435 (D. Del. 2015), the district court reviewed all recent Federal Circuit opinions,

23  including *LaserDynamics, Lucent,* and *VirnetX,* and rejected the defendant's motion for a new trial

24  on damages following the jury's verdict.  "There was substantial evidence for the jury to find first

25  that the infringing features of the Platform are not separable from the Platform itself, such that the

26  infringing and non-infringing components function together as a single unit, and second that the

27  infringing features are the basis for consumer demand of the product.  Therefore, it was

28  appropriate for the jury to consider the entire market value of the Platform overall in calculating

11

1    the damages award." *Id.* at *39. The evidence included testimony that the patented "static binary

2    analysis is a core function of the Platform in analyzing mobile applications," that "the Platform

3    benefits substantially from including static analysis," and that "the speed and accuracy in behavior

4    detection—which Mr. Watkins attributed to static analysis—is important to consumers." *Id.* at

5    *39-40. The court thus clearly applied a deferential, substantial evidence standard. Moreover, the

6    court held: "Even if there were evidence suggesting that the value of the infringing features could

7    be apportioned, the jury was free to make credibility determinations and believe the witness it

8    considers more trustworthy." *Id.* at *40 (internal quotations omitted).

9            The *Veracode* court also distinguished *LaserDynamics* and *Lucent* as extreme cases where

10    minor features (an optical drive in a computer, a date picker in Outlook) could not be said to drive

11    demand for the overall product. The case at bar was distinguishable because there was evidence

12    that the patented features were "important to consumers." *Id.* at *40. The district court also

13    expressly rejected the notion that special proof was required to establish causation:

14            There was sufficient evidence—summarized above—to support the conclusion
             that this infringing analysis is crucial to the marketable features of the Platform
15            and accordingly forms the basis for consumer demand for the Platform. Although
             market studies and consumer surveys are useful mechanisms for demonstrating
16            consumer demand, *see LaserDynamics v. Quanta Computer*, 694 F.3d 51, 69
             (2012), any evidence probative of 'the extent to which the infringing method is
17            used by consumers,' or similar data, can be relevant in supporting the application
             of the entire market value rule. *See, Lucent*, 580 F.3d 1301, 1334–35 (2009).
18            Here, there was such evidence adequate to support the jury's use of the market
             value of the entire Platform to calculate a reasonable royalty. A reasonable jury
19            could accept or reject the expert testimony provided and either parties' theory of
             the damages. *See, i4i Ltd.*, 598 F.3d at 856.
20

21

22    *Id.* at *40-41.

23            In *Avocent Redmond Corp. v. Rose Electronics,* 2013 WL 1855847, *1-2 (W.D. Wa. 2013),

24    the district court similarly considered *LaserDynamics, Lucent*, and *Uniloc*, and rejected

25    defendant's attempt to exclude the testimony of plaintiff's expert and instead referred the EMVR

26    issue to the jury. The court found that the expert's testimony was " based on sufficient facts and

27    evidence to be presented to the jury" where the expert "relied on evidence showing that, once the

28    OSD switch products were introduced into the market, the demand for non-OSD switches dropped

                                                    12

1   precipitously.  When given the choice between purchasing an OSD-equipped switch at a premium

2   price or purchasing standard KVM switch hardware, customers eschewed the old technology,

3   preferring to pay more for the claimed invention.  In these circumstances, where the original

4   product remains on the market but is rejected (even in the smaller port configurations), plaintiff

5   has demonstrated that each sale of an OSD-equipped switch is driven by the patented invention.

6   Because parties to a hypothetical negotiation in 2001 would have known that the presence of the

7   OSD was driving demand for the product . . . it is not unreasonable for [the expert] to have

8   included the entire market value of the KVM switches in his royalty calculation." *Id.* at *2.

9        Similarly, in *Internet Machines LLC v. Alienware Corporation*, 2013 WL 4056282, *14

10  (E.D. Tex. 2013), the district court considered *LaserDynamics* and denied JMOL on damages,

11  holding "Even if the entire market value rule were applicable, the Court finds substantial evidence

12  to show that the patented invention drove customer demand for the product.  Ultimately, the Court

13  finds there was substantial evidence to support Mr. Bratic's royalty base determination."  The

14  court also cited the strong presumption in favor of letting the jury determine damages and denied

15  defendant's motion for a new trial on damages: "Internet Machines adequately tied its royalty base

16  and royalty rate to the patented technology.  This is not a situation where the damages requested

17  were entirely speculative or arbitrary.  Rather, as highlighted earlier, the jury's damages award is

18  supported by substantial evidence." *Id.* at *15.

19       The bottom line is the jury should be allowed to weigh the evidence and make its own

20  decision as to whether EMVR applies.  A brief summary of Power Integrations' EMVR evidence

21  includes the following:

22  • Testimony from multiple witnesses that the '079 patented technology was and

23     continues to be a "must have" feature for meeting government efficiency regulations

24     and customer demands for standby efficiency;

25  • Defendants' own documents confirming that the infringing "green mode" feature, and

26     its capacity for meeting increasingly stringent efficiency regulations, drive demand for

27     the '079 patented technology and for the products incorporating that technology;

28

13

- Evidence of customer specifications from head-to-head competition between PI and SG that require the patented invention;

- Testimony from Power Integrations' technical expert that the '079 invention was and continues to be required to satisfy customer specifications, including specifically energy efficiency regulations;

- Proof that PI's product with the patented feature (TOPSwitch-GX) displaced its similar product without it (TOPSwitch-FX);

- Testimony that the reason the GX displaced the FX was in fact the patented technology;

- Defendants' failure to remove the patented technology, thus confirming its necessity;

- Defendants' failure to adopt any alleged alternative during the damages period as further confirmation of the necessity of the '079 patent feature and the absence of acceptable alternatives;

- Testimony by Dr. Putnam regarding the economic evidence of demand of the type he would rely upon as an economist.

**D.      If Apportionment Is Required, the Jury Can Do It.**

Because 35 U.S.C. § 284 guarantees no "less than a reasonable royalty" following a finding of infringement, the jury must still determine damages even without the benefit of expert testimony.  "If a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record." *Apple v. Motorola,* 757 F.3d at 1327 (Fed. Cir. 2014); *see also id.* at 1328 (reversing summary judgment following exclusion of damages expert; "if a patentee raises a factual issue regarding whether it is due any non-zero royalty, summary judgment must be denied"); *id.* at 1330 ("Even if Apple had not submitted expert evidence, this alone would not support a finding that zero is a reasonable royalty."); *Info–Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371-72 (Fed. Cir. 2015) (same).

The jury's duties include apportionment if required.  For example, in *Ericsson*, the Federal Circuit held that "a jury must ultimately 'apportion the … patentee's damages between the patented feature and the unpatented features' using 'reliable and tangible' evidence."  773 F.3d 1201 at 1226.  Similarly, in *Intellectual Ventures,* Judge Stark rejected defendant's motion *in*

14

*limine* and *Daubert* motions, and instead instructed the jury to determine whether EMVR applies and in the alternative instructed the jury to apportion.  2015 WL 307572 at *1.  The jury's role in this regard is also confirmed by this District's model jury instructions: "When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features."  N.D. Cal. Model Patent Jury Instr. B.5.7.

      **E.**      **Exclusion of Dr. Putnam's EMVR Testimony in the Middle of Power Integrations' Case Would Be Procedurally Improper.**

Defendant has indicated that it will attempt to preclude Dr. Putnam from relying upon EMVR before he testifies.  In addition to being substantively wrong for the reasons stated above (because it would usurp the fact-finding role of the jury), such a motion would be procedurally improper.  First, under Fed. R. Evid. 703, Dr. Putnam should be allowed to testify about whether experts in his field would rely upon the kinds of evidence introduced at trial: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  *Apple v. Motorola*, 757 F.3d 1286, 1314 (quoting Fed. R. Evid. 703).

Second, motions *in limine* are limited to addressing evidentiary issues and not dispositive substantive relief.  "An expert is not admitted or excluded on the basis of its ability to establish an element of a prima facie case."  *Badger v. Wal-Mart Stores, Inc.*, 2013 U.S. Dist. LEXIS 91216, 13 (D. Nev. June 28, 2013), (denying a motion *in limine* to exclude certain damages claims based on lack of expert testimony to show causation because "the admissibility of testimony under Fed. R. Evid. 702 does not depend on an expert's ability to establish causation.").  When the district court fulfills its gatekeeping role with respect to expert evidence, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (U.S. 1993); *see also Schudel v. GE*, 120 F.3d 991, 996 (9th Cir. 1997).

15

1    The Federal Circuit has also explained why it is improper and risky to convert a motion *in*

2    *limine* into a motion for summary judgment: "[i]n doing so, the court did not allow for full

3    development of the evidence and deprived [the defendant] of an opportunity to present all pertinent

4    material to defend against the dismissal of its inequitable conduct defense." *Meyer Intellectual*

5    *Properties v. Bodum*, 690 F.3d 1354, 1378 (2012) (reversing exclusion of evidence on a motion *in*

6    *limine*).

7    Here, applicability of EMVR is not an issue of admissibility, but of sufficiency of the

8    evidence.  The entire basis for Fairchild's purported motion *in limine* is that Power Integrations

9    allegedly cannot meet its burden of proving that EMVR applies.  Fairchild has not shown any

10    problems with Dr. Putnam's methodology, but attacks his factual predicates and conclusion.

11    Third, the Court has already denied Fairchild's *Daubert* motion and untimely motion for

12    summary judgment.  [Dkt. No. 747 at 3 (denying *Daubert* for Dr. Putnam on all other grounds

13    including EMVR), Dkt. No. 746 at169 ("With respect to the other two scenarios that deal with

14    EMVR.  At the moment, I'm not finding there's any problem with what I'm calling

15    methodology."), Dkt. No. 758.]  A motion for a judgment as a matter of law ("JMOL") in the

16    middle of Power Integrations' case would of course be impermissible as premature.  A motion for

17    JMOL can be brought only if a party **has been fully heard on an issue** during a jury trial and the

18    court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for

19    the party on that issue." Fed. R. Civ. P. 50(a)(1) (emphasis added).  Before Dr. Putnam testifies,

20    Power Integrations will not have been "fully heard."  At that stage, exclusion of Dr. Putnam's

21    opinion would be improper.  The procedurally proper course (and the safest course to avoid

22    potentially having to re-try the case yet again as a result of excluding evidence) is to develop the

23    full record at trial.  Fairchild, if it so desires, can move for JMOL after Power Integrations has been

24    fully heard and/or after a verdict has been rendered.

25    In the meantime, the proper way for Fairchild to protect its interests is to test the

26    sufficiency of the evidence through cross-examination.  *Daubert*, 509 U.S. at 595.

27

28

1  Dated:  December 3, 2015                    FISH & RICHARDSON P.C.

2

3                                              By:   /s/ Michael R. Headley
                                                      Michael R. Headley
4
                                               Attorneys for Plaintiff
5                                              POWER INTEGRATIONS, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28