UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| POWER INTEGRATIONS, INC.,<br>a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, and FAIRCHILD (TAIWAN) CORPORATION,<br>a Taiwanese corporation,<br><br>Defendants. | Case No. 09-cv-05235- MMC<br><br>**FINAL JURY INSTRUCTIONS** |

## 1. GENERAL INSTRUCTIONS

### 1.1 DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate. You will also have a verdict form, which will list the questions that you must answer to decide this case.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**1.2 BURDENS OF PROOF**

This is a civil case in which Power Integrations is the owner of two patents which it has already been determined that Fairchild infringes. A party whose patents have been infringed is entitled to money damages. The factual issues you will decide must be proven by what we refer to as a "preponderance of the evidence." That means Power Integrations has to produce evidence that, when considered in light of all of the facts, leads you to believe that what Power Integrations claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of Power Integrations must make the scales tip somewhat to its side.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

**1.3 WHAT IS AND WHAT IS NOT EVIDENCE**

I want to remind you once again what is, and what is not, evidence that you must use to decide the facts of this case. The evidence you are to consider in deciding what the facts are consists of:

1. The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2. The exhibits that have been admitted into evidence; and

3. Any facts to which all the parties have agreed.

In reaching your verdict, you must consider only the testimony and exhibits admitted into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some testimony and exhibits have been admitted only for a limited purpose; where I have given a limiting instruction, you must follow it.

4. Anything you have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at trial.

## 1.4 DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw, heard, or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in light of reason, experience, and common sense.

You should consider both direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## 1.5 CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6 CREDIBILITY OF WITNESSES

In determining the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**1.7 NUMBER OF WITNESSES**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. The proof of a fact or the weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## 1.8 EXPERT OPINION

When knowledge of technical subject matter may be helpful to the jury, a person who has special training, education, or experience in that technical field – a person called an expert witness – is permitted to state an opinion on those technical matters.

You are not required, however, to accept that opinion. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**1.9 DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth, and lawyers for each party may ask questions. The questions and answers are recorded. The deposition of a person can be used at trial under certain circumstances, for example, when a person is unavailable to testify at trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

If deposition testimony is read to you by the attorneys, do not place any significance on the behavior or tone of voice of the person reading the questions or answers.

**1.10 CHARTS AND SUMMARIES RECEIVED AND NOT RECEIVED IN EVIDENCE**

During the course of the trial, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence deserves. You will have these admitted exhibits in the jury room for your deliberations.

Other exhibits (including charts and summaries) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence. They are not themselves evidence or proof of any facts. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case. You will not have these demonstrative exhibits in the jury room for your deliberation.

**1.11 USE OF NOTES**

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**2. DAMAGES GENERALLY**

I will now instruct you about the measure of damages. You must decide, according to the instructions I give you, the appropriate amount of money damages to compensate Power Integrations for Fairchild's infringement.

The amount of money damages must be adequate to compensate Power Integrations for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer. A patent holder has the burden to persuade you of the amount of its damages. You should award only those damages that the patent holder more likely than not suffered. While the patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. A patent holder is not entitled to damages that are remote or speculative.

Mere difficulty in ascertaining damages is not fatal to the patent owner. You may base your evaluation of reasonable certainty on opinion evidence. Any doubts regarding the computation of the amount of damages should be resolved against the infringer and in favor of the patentee.

**2.1 REASONABLE ROYALTY**

Power Integrations is seeking money damages for past infringement in the amount of a reasonable royalty.

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of the hypothetical negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

Where an infringing product has features that are covered by the patent-in-suit and features that are not covered by the patent-in-suit, there are two alternative reasonable royalty damages theories, apportionment and entire market value rule.

Under the entire market value rule, a plaintiff may be awarded damages attributable to an entire multi-feature product where the plaintiff establishes that the patented feature creates the basis for customer demand for that product. It is not enough to show that the patented feature is viewed as valuable, important, or essential to the entire product.

Under the apportionment of damages rule, the ultimate damages must reflect the value attributable to the infringing features of the product, and no more. Measuring this value requires you to identify and award only the value of the patented features.

If it is not established that the patented feature creates the basis for customer demand for the product, you must apportion the royalty down to a reasonable estimate of the value of the patented feature.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**2.2 FACTORS FOR DETERMINING REASONABLE ROYALTY**

In determining a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patent owner for the licensing of the patent in suit, proving or tending to prove an established royalty.
2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
3. The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
4. The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.
5. The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.
6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
7. The duration of the patent and the term of the license.
8. The established profitability of the products made under the patents-in-suit; their commercial success; and their current popularity.
9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention, and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the inventions as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patent owner) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you on each of these factors. The fifteenth factor establishes the framework which

you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

## 2.3 PATENT DAMAGES: NON-INFRINGING ALTERNATIVES

One of the factors that can be considered during a reasonable royalty hypothetical negotiation is the availability of acceptable non-infringing alternatives to the patented technology. Not all alternatives are acceptable non-infringing alternatives. To be an acceptable non-infringing alternative, the alternative must have been acceptable to both the party and its customers. Also, the alternative must have been available to the party, meaning the party must have had the capability of implementing the alternative. However, an acceptable non-infringing alternative need not have actually been produced, marketed, or sold during the period of infringement, so long as it was available to the party. To determine whether there were acceptable non-infringing alternatives, you may consider the following:

(1) Whether the alternative was available around the time of the hypothetical negotiation;

(2) Whether the effects of using the alternative were known in the industry;

(3) Whether the alternative would have had the advantages of the patented invention;

(4) Whether customers would have accepted the alternative;

(5) Whether the party had the necessary equipment, know-how, and experience to implement the alternative; and

(6) The time and cost to the party of implementing the alternative.

**2.4 PATENT DAMAGES: NO DAMAGES FOR FOREIGN SALES**

U.S. patent law does not operate outside the United States. Patent infringement damages compensate only for the consequences of domestic activity. Thus, you may not award damages based on the sale of products that were not imported into the United States.

**2.5 INFRINGER'S PROFIT**

While an infringer's profit expectation is a factor to consider in the overall reasonable royalty analysis, it is not an absolute limit to the amount of the reasonable royalty that may be awarded based upon a reasoned hypothetical negotiation.

## 2.6 INFRINGER'S MENTAL STATE

During Fairchild's opening statement, you may have heard counsel for Fairchild state that Fairchild had reasons for believing that it did not infringe and that the patents were invalid. Fairchild's state of mind is not at issue; you should disregard any such statement.

## 3. DELIBERATION AND VERDICT

### 3.1 DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in Court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach unanimous verdict, but of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**3.2 COMMUNICATION WITH THE COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.

If you send out a question, I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. You may continue your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the Court.

**3.3 RETURN OF VERDICT**

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then advise the Court that you are ready to return to the courtroom.