1  Frank E. Scherkenbach (CA #142549)
   scherkenbach@fr.com
2  FISH & RICHARDSON P.C.
   One Marina Park Drive
3  Boston, Massachusetts 02210-1878
   Telephone: (617) 542-5070
4  Facsimile: (617) 542-8906

5  Howard G. Pollack (CA #162897)
   pollack@fr.com
6  Michael R. Headley (CA #220834)
   headley@fr.com
7  FISH & RICHARDSON P.C.
   500 Arguello Street, Suite 500
8  Redwood City, California 94063
   Telephone: (650) 839-5070
9  Facsimile: (650) 839-5071

10 Attorneys for Plaintiff
   POWER INTEGRATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, and FAIRCHILD (TAIWAN) CORPORATION, a Taiwanese corporation,<br><br>Defendants. | Case No. 09-cv-05235- MMC<br><br>**POWER INTEGRATIONS' OPPOSITION TO FAIRCHILD'S RENEWED MOTION TO STAY**<br><br>DATE: September 6, 2019<br>TIME: 9:00 a.m.<br>JUDGE: Hon. Maxine M. Chesney<br>PLACE: Courtroom 7, 19th Floor |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL STANDARD | 1 |
| III. | ARGUMENT | 3 |
| | A. Fairchild's Motion Should Be Denied for the Same Reasons As Its 2016 Motion | 3 |
| |     1. The Very Late Stage of This Case Strongly Disfavors a Stay | 4 |
| |     2. A Stay at This Stage Would Not Simplify the Case | 5 |
| |     3. A Stay at This Stage Would Prejudice PI and Give Fairchild an Undue Tactical Advantage | 8 |
| | B. Fairchild's Motion Should Also Be Denied Because It Is Contrary to Ninth Circuit Law | 10 |
| IV. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aqua Prods., Inc. v. Matal*,
 872 F.3d 1290 (2017) (*en banc*) .................................................................................. 6

*Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
 2011 WL 3267768 (N.D. Cal. 2011) ............................................................................ 9

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
 104 S. Ct. 2778 (1984) ................................................................................................. 6

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
 2007 WL 1052883 (N.D. Cal. 2007) ....................................................................... 2, 5

*Cuozzo Speed Techs., LLC v. Lee*,
 136 S. Ct. 2131 (2016) ............................................................................................ 5, 6

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
 498 F.3d 1059 (9th Cir. 2007) ................................................................................. 7, 9

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
 721 F.3d 1330 (Fed. Cir. 2013) .................................................................................... 8

*Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*,
 139 S. Ct. 628 (2019) ................................................................................................... 6

*Iancu v. Brunetti*,
 139 S. Ct. 2294 (2019) ................................................................................................. 6

*Interwoven, Inc. v. Vertical Computer Systems, Inc.*,
 2012 WL 761692 (N.D. Cal. 2012) .............................................................. 1, 2, 5, 8

*Landis v. N. Am. Co.*,
 57 S. Ct. 163 (1936) ..................................................................................................... 7

*Leyva v. Certified Grocers of Cal., Ltd.*,
 593 F.2d 857 (9th Cir. 1979) ....................................................................................... 8

*Lockyer v. Mirant Corp.*,
 398 F.3d 1098 (9th Cir. 2005) .................................................................................. 1, 2

*Netlist, Inc. v. Smart Storage Systems, Inc.*,
 2015 WL 1738192 (N.D. Cal. Apr. 9, 2015) ............................................................... 4

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC*,
 138 S. Ct. 1365 (2018) ................................................................................................. 6

**TABLE OF AUTHORITIES (cont'd.)**
Page(s)

*Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*,
 904 F.3d 965 (Fed. Cir. 2018) ............................................................................................. 4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
 No. 1:04-cv-01371-LPS (D. Del. Jan. 19, 2018), D.I. 966 ................................................. 10

*SAS Institute, Inc. v. Iancu*,
 138 S. Ct. 1348 (2018) ......................................................................................................... 5

*Smith v. Berryhill*,
 139 S. Ct. 1765 (2019) ......................................................................................................... 6

*SmithKline Beecham Corp. v. Apotex Corp.*,
 439 F.3d 1312 (Fed. Cir. 2006) ........................................................................................... 7

*SynQor, Inc., v. Artesyn Technologies, Inc.*,
 2012 U.S. App. LEXIS 1992 (Fed. Cir. 2012) ............................................................ 3, 5, 8

*Telemac Corp. v. Teledigital, Inc.*,
 450 F. Supp. 2d 1107 (N.D. Cal. 2004) ............................................................................... 3

*United States v. Cortez-Ruiz*,
 225 F. Supp. 3d 1093 (N.D. Cal. 2016) ......................................................................... 2, 10

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
 943 F. Supp. 2d 1028 (C.D. Cal. 2013) ....................................................................... 2, 5, 9

*Versata Software, Inc. v. SAP Am., Inc.*,
 2014 WL 1600327 (E.D. Tex. 2014), *aff'd sub nom. Versata Computer Indus.
 Solution v. SAP Am., Inc.*, 564 Fed. Appx. 600 (Fed. Cir. 2014) (per curiam) ................... 8

*Wi-Fi One, LLC v. Broadcom Corp.*,
 878 F.3d 1364 (Fed. Cir. 2018) ........................................................................................ 5, 6

*Yong v. INS*,
 208 F.3d 1116 (9th Cir. 2000) .................................................................................. 2, 8, 10

**Statutes**

35 U.S.C. § 314(d) ...................................................................................................................... 5

35 U.S.C. § 315(b) ........................................................................................................... 5, 6, 7, 8

**Other Authorities**

First Amendment ........................................................................................................................ 6

**<u>TABLE OF AUTHORITIES (cont'd.)</u>**

<u>**Page(s)**</u>

H.R. REP. NO. 112-98................................................................................................................ 8

## I. INTRODUCTION

Fairchild's renewed motion to stay this case based on IPRs filed by its parent ON is even weaker than its previous motion to stay based on the same IPRs. The Court denied that motion in 2016, and much the same reasoning applies now. (*See* Order Denying Motion to Stay, Dkt. No. 1017 at 3, citing PI's previous opposition, Dkt. No. 1010.) Those IPRs have now been resolved in PI's favor by the Federal Circuit. Fairchild still hopes to change the outcome, but that is unlikely and in any event could take years. One unifying theme among cases denying stays is that the requested stay would be indefinite or too lengthy. By contrast, this case is now almost ten years old, and should be resolved as soon as practicable.

Moreover, the specific reason that Fairchild now gives for a stay—the possibility that the Supreme Court might change the law regarding judicial review of IPRs in another case—is something the Ninth Circuit has repeatedly said is *not* an adequate basis for a stay.

## II. LEGAL STANDARD

PI agrees that this Court has discretion to enter stays to control its docket, and that the Ninth Circuit has identified three competing interests: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (as cited in Fairchild's brief). However, in the context of stays requested in response to PTO validity challenges, district courts in the Ninth Circuit typically characterize the factors as "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of a case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Dkt. No. 1017 at 2, citing *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2004); *see also, Interwoven, Inc. v. Vertical Computer Systems, Inc.*, 2012 WL 761692, at *2 (N.D. Cal. 2012) (listing similar factors).

Fairchild also fails to mention that a court's discretion to grant stays is circumscribed. *See Lockyer*, 398 F.3d at 1105 ("We review a district court's stay order for abuse of discretion, but this

1                                                              PI'S OPP. TO FAIRCHILD'S RENEWED MOT. TO STAY
                                                                                                     Case No. 09-cv-05235-MMC

standard is 'somewhat less deferential' than the abuse of discretion standard used in other contexts."). Indeed, in *Lockyer*—like many other of Fairchild's cited cases—the Ninth Circuit vacated the district court's stay. *Id.* at 1112.

Where a stay is requested because of the possibility that the Supreme Court might change the law, the Ninth Circuit has been clear: "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) (vacating stay); *see also, United States v. Cortez-Ruiz*, 225 F. Supp. 3d 1093, 1105-1106 (N.D. Cal. 2016) (citing *Yong* and denying stay).

In addition, where a stay is requested because of a patent validity challenge in the PTO, numerous courts, including this District, have declined to stay late-stage litigation, even well short of the maturity of the present case. For example, in *Interwoven*, the court denied a stay requested shortly after the court's claim construction hearing: "Vertical emphasizes that Interwoven waited a year and three months into litigation to file for reexamination, only doing so after receiving the Court's claim construction order. This order notably rejected most of Interwoven's arguments, construing the majority of disputed terms according to their plain and ordinary meanings. That Interwoven waited until after receiving an unfavorable ruling to request reexamination lends credence to Vertical's contention that the current motion is simply a delaying strategy." 2012 WL 761692 at *2; *see also id.* at *4. Many other cases reach a similar conclusion. *E.g.*, *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031, 1035 (C.D. Cal. 2013) ("While not much discovery has occurred, Defendant did not file its *inter partes* review petitions until almost a year after being served with the complaint, and during that time the Court spent substantial effort construing the claims. The Court's expenditure of resources is an important factor in evaluating the stage of the proceedings. . . . Another consideration is the Court's ability to control its docket to ensure that cases are managed in the interest of justice. The Court is concerned that allowing the progress of its docket to depend on the status of proceedings elsewhere can interfere with its obligation 'to secure the just, speedy, and inexpensive determination of every action.'") (citing FRCP 1); *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, 2007 WL

2      PI'S OPP. TO FAIRCHILD'S RENEWED MOT. TO STAY
Case No. 09-cv-05235- MMC

1052883, *1 (N.D. Cal. 2007) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner. . . . . [T]he Court has invested a large amount of time in preparing a claim construction ruling. We are nine months into the case and eleven months from trial.").

Similarly, the Federal Circuit has declined to stay the appeal of an already-tried case pending IPR. *SynQor, Inc., v. Artesyn Technologies, Inc.*, 2012 U.S. App. LEXIS 1992, at *5-6 (Fed. Cir. 2012). In that case, "[a] jury found that the appellants had infringed each patent and awarded damages. The case [was] currently on appeal before [the Federal Circuit], although additional proceedings remain[ed] pending below." *Id.* at *5. Meanwhile, "the PTO ha[d] rejected all claims being examined and SynQor ha[d] filed an appeal seeking review by the BPAI." *Id.* at *6. Under these circumstances, the Federal Circuit held that a stay was unjustified: "Here, however, the court is being asked to stay proceedings at the relative end of the litigation process pending a lengthy administrative process that even the appellants predict will take at least 10-14 months to complete. Under these circumstances, we deem it appropriate to deny the motions to stay." *Id.*

## III. ARGUMENT

### A. Fairchild's Motion Should Be Denied for the Same Reasons As Its 2016 Motion

In response to Fairchild's previous motion to stay, the Court held "[t]o the extent Fairchild seeks a stay pending resolution of the two IPR proceedings, the Court finds, for the reasons stated by Power Integrations, each of the three relevant factors, *see Telemac Corp.*, 450 F. Supp. 2d at 1111, weighs against a stay." (Dkt. No. 1017 at 3.) For example, "as to the third factor, the Court, given the late stage of the case, [found] persuasive Power Integrations' argument as to tactical disadvantage." *Id.* at 1017 n.3.

The same reasoning applies now. Fairchild's renewed request for a stay after losing not one but two jury verdicts is unsupported by precedent and clearly tactical. The first jury found that Fairchild willfully infringed PI's patents and that those patents are valid (Dkt. No. 551), while the second awarded PI damages of $139.8 million (Dkt. No. 918). All that remains is a final trial to determine the damages owed for Fairchild's egregious infringement. Moreover, contrary to

Fairchild's assertion, it is not PI's fault that a third trial is required. The first damages verdict was vacated (on reconsideration) because the Court found that the Federal Circuit changed the damages law in *VirnetX*. (Dkt. No. 666 at 1-2.) The second damages verdict was vacated because the Federal Circuit changed the law regarding EMVR after this Court carefully reviewed the prior cases. *Compare Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018) (adding a negative burden of proof: "Where the accused infringer presents evidence that its accused product has other valuable features beyond the patented feature, the patent holder must establish that these features do not cause consumers to purchase the product.") with Dkt. No. 918 (Jury answering yes to the question "In arriving at the above figure, did the '079 patented feature create the basis for customer demand for the infringing Fairchild products (Entire Market Value Rule)?") and Dkt. 986 at 11 (this Court finding that verdict consistent with previous Federal Circuit authority).

In any event, PI is aware of no case as advanced as the present one that has been stayed in favor of an IPR, and Fairchild cites none. PI is also aware of no case that has been stayed in favor of an IPR that has been resolved in the non-movant's favor by the Federal Circuit. As detailed below, Fairchild's hope that the Federal Circuit might be reversed by the Supreme Court is also unfounded, and not a proper basis for stay.

### 1. The Very Late Stage of This Case Strongly Disfavors a Stay

In its 2016 motion to stay, Fairchild asserted that "the advanced stage of this case does not alter the Court's analysis of issues relevant to the equities of a stay." (Dkt. No. 1006 at 12.) That argument is plainly wrong, the Court implicitly rejected it in denying a stay then, and none of Fairchild's cited cases supported it. Indeed, each of the cases Fairchild cited involved very early stage litigation. *E.g.*, *Netlist, Inc. v. Smart Storage Systems, Inc.*, 2015 WL 1738192, at *1 (N.D. Cal. Apr. 9, 2015) ("Depositions and expert discovery remain. No claim construction or trial date is scheduled. In short, the litigation has not advanced to the point of a claim construction decision, assessment of the merits, trial, or other 'point of no return.'"). This time, Fairchild simply ignores the late stage of this case, and does not cite any cases addressing the issue.

| | |
|---|---|
| 1 | In fact, most courts are reluctant to grant stays after they have invested the effort to construe |
| 2 | claims, much less after they have conducted *trials* and denied post-trial challenges to the verdicts, as |
| 3 | the Court has done here. (Dkt. Nos. 632 and 986 (JMOL rulings).) Here, the amount of work |
| 4 | remaining for the Court is small compared to the huge effort that it has already put into the case |
| 5 | (including two trials and post-trial motions). As in *Interwoven*, *Universal*, and *Comcast*, the |
| 6 | Court's substantial investment in the case, along with its obligation "to secure the just, speedy, and |
| 7 | inexpensive determination of every action," strongly counsels against a stay. *Universal*, 943 F. |
| 8 | Supp. 2d at 1035 (citing FRCP 1). |
| 9 | It is also time for PI to receive compensation for Fairchild's infringement. Fairchild should |
| 10 | actually have paid PI when the infringement at issue began, and this case has now been pending for |
| 11 | ten years. Damages should be determined so that PI can finally receive compensation for |
| 12 | Fairchild's willful infringement. *Deliberately* delaying this result would be unjust. *See SynQor*, |
| 13 | 2012 U.S. at *6 (denying stay that would delay already tried case by 10-14 months). |

### 2.    A Stay at This Stage Would Not Simplify the Case

Fairchild greatly exaggerates the possibility that the Supreme Court's grant of *certiorari* in *Dex Media* will resolve this case. In *Dex Media*, the appellant argues that 35 U.S.C. § 314(d) prevents appeal of the PTO's decisions instituting an IPR. However, in *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364, 1367 (Fed. Cir. 2018), the Federal Circuit held *en banc* that it has the authority to enforce the time bar of Section 315(b). After remand in that case, the Supreme Court denied *certiorari*. 139 S. Ct. 826 (2019). More importantly, in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018), the Supreme Court rejected the argument that Section 314(d) prevents courts from reviewing institution decisions entirely, even if the PTO acted outside its statutory authority. *Id.* at 1359 ("[T]his reading overreads both the statute and our precedent. As *Cuozzo* recognized, we begin with the strong presumption in favor of judicial review. To overcome that presumption, *Cuozzo* explained, this Court's precedents require clear and convincing indications that Congress meant to foreclose review.") (internal citations and quotations omitted).

It is thus wishful thinking (at best) for Fairchild to suggest that the grant of *certiorari* in *Dex Media* means that the Supreme Court is likely to reverse *Wi-Fi One*—rather than, for example,

elaborating on the authority of federal courts to review administrative agencies' interpretation of statutes that set the bounds of the agencies' power. As the Federal Circuit explained in *Wi-Fi One*, the time bar of § 315(b) "is not merely about preliminary procedural requirements that may be corrected if they fail to reflect real-world facts, but about real-world facts *that limit the agency's authority* to act under the IPR scheme." 878 F.3d at 1374 (emphasis added). The Court further held that "[e]nforcing statutory limits on an agency's authority to act is precisely the type of issue that courts have historically reviewed." *Id.* Under these circumstances, it would hardly make sense to defer to an agency's interpretation of its own statutory limits. Put another way, there is no reason to believe that "Congress did not intend any particular result and instead meant to allow the agency to resolve the question." *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1315 (2017) (*en banc*). To the contrary, as explained by the Federal Circuit in *Wi-Fi One*, the time bar is meant to balance important conflicting interests and affects matters beyond the IPR itself. 878 F.3d at 1374. It is thus extremely unlikely that Congress intended to delegate construction of § 315(b) to the PTO.

The Supreme Court's analysis in *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016) reinforces this conclusion. There, the Court deferred to the PTO's authority to review the *merits* of prior art in deciding to institute because that is an area where Congress clearly wanted the PTAB to apply its expertise. *Id.* at 2142. In addition, the Supreme Court appears to be moving in the direction of increasingly *less* deference to executive agencies. *E.g.*, *Smith v. Berryhill*, 139 S. Ct. 1765, 1778 (2019) (latest case narrowly construing deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778 (1984); "The scope of judicial review, meanwhile, is hardly the kind of question that the Court presumes that Congress implicitly delegated to an agency.").

It is also not true that the grant of *certiorari* means that the Supreme Court will necessarily reverse the Federal Circuit. There have been many recent instances of the Supreme Court *affirming* the Federal Circuit. *E.g.*, *Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*, 139 S. Ct. 628 (2019) (affirming Federal Circuit ruling that confidential sales may be invalidating prior art); *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) (affirming Federal Circuit ruling that ban on immoral trademarks violates the First Amendment); *Oil States Energy Services, LLC v. Greene's Energy*

*Group, LLC*, 138 S. Ct. 1365 (2018) (affirming Federal Circuit ruling that IPRs do not violate Article III). Overall, the Supreme Court's reversal rate of the Federal Circuit is 70.6%, below many other circuits, including the Ninth Circuit. (*See* Ex. 1 hereto, https://ballotpedia.org/SCOTUS_case_reversal_rates_(2007_-_Present).)

In any event, even if the Supreme Court were to hold in *Dex Media* that the courts have no authority to review the PTO's interpretation of § 315(b), there would be the issue of ON's failure to preserve this issue. Under Federal Circuit procedure, issues not raised by a party's brief are waived. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006). Fairchild argues that ON should be excused from waiver, but that would have to be decided by the Federal Circuit. In addition, even if the Federal Circuit were to vacate its decision in this case on the time bar, that would still leave appellate review of the PTO's action on the merits. PI's brief in the appeal from the '079 patent IPR spent approximately eleven pages of argument on the time bar, and nearly *twice* as many pages on other issues, including the fact that the asserted prior art was cumulative of art already rejected by the PTO in reexamination and the fact that the PTO permitted serious procedural irregularities. (*See* PI's appeal brief, Ex. 2 hereto.)

Thus, if the Federal Circuit were to vacate its decision on the time bar, it would have to take up those remaining issues. PI could easily prevail again—or the Federal Circuit could remand to the PTO, which would likely take many months to issue a new decision, which would be followed by another appeal that would likely take at least another year. So instead of *Dex Media* resolving this case in early 2020, as Fairchild asserts, it could take years.[1]

A stay of such lengthy and uncertain duration is contrary to the cases that Fairchild itself cites, including *Landis v. N. Am. Co.*, 57 S. Ct. 163, 167 (1936) (vacating stay of uncertain duration that might last a year or even more). As noted above, a unifying theme of cases denying stays is that the requested stay would be indefinite or too lengthy. *E.g.*, *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67, 1070 (9th Cir. 2007) (vacating stay of indefinite

---

[1] In addition, if Fairchild's prediction of an early 2020 resolution came true, the trial in this matter could be postponed at that time, since PI has proposed a trial date of May or June 2020. In the meantime, there is no reason to delay exchanging expert reports and preparing to complete the case.

duration); *Yong*, 208 F.3d at 1120-21 (vacating stay of indefinite duration that might last years); *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."; vacating and remanding); *SynQor*, 2012 U.S. App. LEXIS 1992, at *6 (denying stay of late-stage litigation where parallel proceeding would take 10-14 months to complete). By contrast, Fairchild cites no case supporting a stay on facts similar to the present one, where the parallel proceeding is of indefinite duration and may last for years more.[2]

### 3. A Stay at This Stage Would Prejudice PI and Give Fairchild an Undue Tactical Advantage.

The tactical nature of Fairchild's motion is apparent from its timing. The '079 IPR was filed in March 2016, just after Fairchild lost the last trial. This weighs strongly against a stay. *E.g.*, *Interwoven*, 2012 WL 761692 at *2 ("That Interwoven waited until after receiving an unfavorable ruling to request reexamination lends credence to Vertical's contention that the current motion is simply a delaying strategy.").

In addition, Fairchild would not even have been permitted to file the new IPRs given that PI filed this suit in 2009. 35 U.S.C. § 315(b) (IPR may not be filed more than one year after litigation begins). This is because Congress did not want the IPR process to be used for tactical gamesmanship. H.R. REP. NO. 112-98 at 48 ("The Committee recognizes the importance of quiet title to patent owners to ensure continued investment resources. While this amendment is intended to remove current disincentives to current administrative processes, the changes made by it are not to be used as tools for harassment or a means to prevent market entry through repeated litigation

---

[2] In addition, as PI briefed in 2016, the IPRs here will likely have no effect on this case due to the operation of *res judicata*. Even if *Dex Media* is decided the way Fairchild hopes, there is a good chance that this case will be completed before the IPRs are finally resolved. And once that happens, it cannot be disturbed by administrative agency action under well-respected principles of *res judicata*. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1341 (Fed. Cir. 2013) (intervening cancellation of claims effective only because district court action not final in the sense that there was "nothing for the court to do but execute the judgment"); *compare Versata Software, Inc. v. SAP Am., Inc.*, 2014 WL 1600327, *2 (E.D. Tex. 2014) (PTO invalidation of claims could not disturb executable district court judgment), *aff'd sub nom. Versata Computer Indus. Solution v. SAP Am., Inc.*, 564 Fed. Appx. 600 (Fed. Cir. 2014) (per curiam).

and administrative attacks on the validity of a patent. Doing so would frustrate the purpose of the section as providing quick and cost effective alternatives to litigation. Further, such activity would divert resources from the research and development of inventions. As such, the Committee intends for the USPTO to address potential abuses and current inefficiencies under its expanded procedural authority."). Yet tactical gamesmanship is exactly what Fairchild's eleventh-hour IPRs are: it skirted the one-year statutory bar by having its new parent, ON Semiconductor, file the new IPRs after Fairchild had already entered into a contract to be acquired. Fairchild then joined these IPRs as an admitted "real party in interest." While the PTO initiated the IPRs anyway – improperly, the Federal Circuit decided – a stay of this action would do nothing except reward Fairchild's gamesmanship.

*Dependable Highway*, cited by Fairchild, actually supports PI. In that case, the Ninth Circuit vacated a stay because the effect would be to force the non-movant to litigate in a forum not of its choosing. 498 F.3d at 1066. The same is true here. PI chose to litigate validity in this Court, and the Jury found the patents at issue not invalid. Fairchild seeks a stay as part of its attempt to undo that result in another forum. *Dependable* is also notable for repeating the Supreme Court's admonition that a stay should be denied, absent a compelling justification, "if there is even a fair possibility that the stay . . . will work damage to some one else." *Id.,* quoting *Landis*, 57 S. Ct. at 166. In this case, there is more than a "fair possibility" that a stay would harm PI.

Finally, PI's decision not to seek an injunction does not eliminate the fact that PI is harmed from delayed payment and that money damages themselves deter infringement by Fairchild and third parties. *E.g.*, *Universal*, 943 F. Supp. 2d at 1034 ("To the extent that *Du Pont* turned on the plaintiff's failure to seek a preliminary injunction, the Court disagrees, and instead, agrees with Avago that on a 'motion to stay, the Court will not hold against [the patentee] its decision to spare the parties more litigation [in the form of a motion for preliminary injunction].'"); *Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, 2011 WL 3267768, at *6 (N.D. Cal. 2011) ("IPtronics suggests that Plaintiff should have requested a preliminary injunction if it were worried about irreparable harm, and that its failure to do so weakens its opposition to the stay motion. This contention is flawed. As IPtronics points out, Avago might have other reasons for

1  deciding not to pursue injunctive relief at this stage—for example, the difficulty of showing a

2  likelihood of success on the merits while its patents are in reexamination. On IPtronics' motion to

3  stay, the Court will not hold against Avago its decision to spare the parties more litigation.").

4  Moreover, PI chose not to renew its request for a permanent injunction in order to streamline and

5  *expedite* resolution of this case. (Dkt. No 1010 at 5 (PI opposition to previous stay motion; "To

6  streamline the case, PI will elect not to renew its motion for permanent injunction in this case.").)

7  Using PI's concession to *delay* this case would be unjust.

8  **B.  Fairchild's Motion Should Also Be Denied Because It Is Contrary to Ninth Circuit Law**

9

10  As explained above, the Ninth Circuit and this District have both held that "once a federal

11  circuit court issues a decision, the district courts within that circuit are bound to follow it and have

12  no authority to await a ruling by the Supreme Court before applying the circuit court's decision as

13  binding authority." *Yong*, 208 F.3d at 1119 n.2; *Cortez-Ruiz*, 225 F. Supp. 3d at 1105-1106.

14  Fairchild argues that this rule does not apply to stays, but both of the cited cases directly

15  addressed stays—and they both ruled against stays. *Yong*, 208 F.3d at 1121; *Cortez-Ruiz*, 225 F.

16  Supp. 3d at 1105. Fairchild also argues that the stated rule should be limited to the particular

17  circumstances of the cited cases, such as *habeus* petitions, but that is not what the quoted holding

18  says. Moreover, there are good policy reasons for district courts not to delay cases just because the

19  Supreme Court might change the law. If this became routine, no case could ever advance.

20  Furthermore, Fairchild does not cite a single case where a stay was entered due to the Supreme

21  Court granting *certiorari*.

22  Fairchild tries to suggest that PI has been inconsistent in the parties' Delaware litigation, but

23  that is not so. PI did not seek a stay; it merely suggested that further proceedings on *its own

24  damages claim* could easily be scheduled to take into account an expected Supreme Court decision

25  on an issue directly relevant to that case, international lost profits. (*See* Ex. 3 hereto, *Power

26  Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 1:04-cv-01371-LPS (D. Del. Jan. 19,

27  2018), D.I. 966 at 1 ("Power Integrations proposes to stage the remaining proceedings to minimize

28  the burden on the Court and the parties and to take account of the Supreme Court's opinion this

term in the case of *WesternGeco*").) Such staging is also possible in this case because PI has proposed a trial date of May or June 2020, and Fairchild says the Supreme Court's decision in *Dex Media* "is expected in early 2020." (Fairchild brief, Dkt No. 1087, at 1.)

IV. **CONCLUSION**

The Court should deny Fairchild's renewed motion to stay. After ten years of litigation, it is time for this case to reach its conclusion.

Dated: August 15, 2019          FISH & RICHARDSON P.C.

By: */s/ Michael R. Headley*
    Michael R. Headley

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.