COLETTE REINER MAYER (SBN 263630)
CRMayer@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Tel: (650) 813-5600
Fax: (650) 494-0792

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., FAIRCHILD SEMICONDUCTOR CORPORATION, and FAIRCHILD (TAIWAN) CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

POWER INTEGRATIONS, INC., a Delaware corporation,

*Plaintiff*,

v.

FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, and FAIRCHILD (TAIWAN) CORPORATION, a Taiwanese corporation,

*Defendants*.

Case No. 09-cv-05235- MMC

**FAIRCHILD'S REPLY IN SUPPORT OF MOTION TO STAY PENDING U.S. SUPREME COURT DECISION IN *DEX MEDIA, INC. v. CLICK-TO-CALL* (No. 18-916)**

Date: September 6, 2019
Time: 9:00 a.m.
Courtroom: 7, 19th Floor

Honorable Maxine Chesney

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Power Integrations Applies The Wrong Standard ..... 2

B. A Stay Is Appropriate Under Telemac ..... 3

1. This Not A "Very Late Stage" Case ..... 3

C. A Stay Will More Likely Than Not Simplify The Issues ..... 4

D. Any Prejudice To Power Integrations—And There Is None—Is Self-Created ..... 5

III. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anker v. Wesley*,
670 F. Supp. 2d 339 (D. Del. 2009) .....1

*AT&T Mobility LLC v. Concepcion*,
130 S. Ct. 3222 (May 24, 2010) .....1

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
No. C 06-04206 WHA, 2007 WL 1052883 (N.D. Cal. April 5, 2007) .....3

*Cuadras v. Metropcs Wireless, Inc.*,
No. CV 09-7897-CAS (AJWx), 2011 WL 227591 (C.D. Cal. Jan 21, 2011) .....1

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.*,
385 F. Supp. 2d 1022 (N.D. Cal. 2005) .....5

*Demshki v. Monteith*,
255 F.3d 986 (9th Cir. 2001) .....1

*Finjan, Inc. v. Symantec Corp.*,
139 F. Supp. 3d 1032 (N.D. Cal. 2015) .....4

*Ganezer v. DirectBuy, Inc.*,
571 F.3d 846 (9th Cir 2009) .....1

*GT Nexus, Inc. v. Inttra, Inc.*,
No. C 11-02145-SBA, 2014 WL 3373088 (N.D. Cal. July 9, 2014) .....6

*Houlihan v. Sussex Tech. Sch. Dist.*,
461 F. Supp. 2d 252 (D. Del. 2006) .....1

*Interwoven, Inc. v. Vertical Comput. Sys., Inc.*,
No. C 10-04645 RS, 2012 WL 761692 (N.D. Cal. Mar. 8, 2012) .....3

*Johns v. Evergreen Presbyterian Ministries, Inc.*,
826 F. Supp. 1050 (E.D. Tex. 1993) .....2

*Landis v. North American Co.*,
299 U.S. 248 (1936) .....1, 2, 3

*Lockyer v. Mirant Corp.*,
398 F.3d 0198 (9th Cir. 2005) .....6

*McCarthy v. Apfel*,
221 F.3d 1119 (9th Cir. 2000) .....1

## TABLE OF AUTHORITIES

**Page(s)**

*Means v. Navajo Nation*,
432 F.3d 924 (9th Cir. 2005)....................1

*Michael v. Ghee*,
325 F. Supp. 2d 829 (N.D. Ohio 2004)....................1

*Odneal v. Dretke*,
435 F. Supp. 2d 608 (S.D. Tex. 2006), *rev'd in part on other grounds*,
324 F. App'x 297 (5th Cir. 2009)....................1

*Polykoff v. Collins*,
816 F.2d 1326 (9th Cir. 1987)....................1

*Power Integrations v. Fairchild Semiconductor*,
904 F.3d 965 (Fed. Cir. 2018)....................6

*SAS Inst. Inc. v. Iancu*,
138 S. Ct. 1348 (2018)....................2, 5

*Sierra Club v. Coca-Cola Corp.*,
673 F. Supp. 1555 (M.D. Fla. 1987)....................2

*Standard Havens Prods. v. Gencor Indus.*,
996 F.2d 1236 (Fed. Cir. 1993)....................4

*SynQor v. Artesyn Technologies*,
2012 U.S. App. LEXIS 1992 (Fed. Cir. Jan. 31, 2012)....................4

*Telemac Corp. v. Teledigital, Inc.*,
450 F. Supp. 2d 1107 (N.D. Cal. 2006)....................2, 3

*TPK Touch Sols., Inc. v. Wintek Electro–Optics Corp.*,
No. 13-cv-2218-JST, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013)....................4

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
943 F. Supp. 2d 1028 (C.D. Cal. 2013)....................2, 3

*Zaklit v. Glob. Linguist Sols., LLC*,
No. CV 13-8654 MMM, 2014 WL 12521725 (C.D. Cal. Mar. 24, 2014)....................3

**Statutes**

35 U.S.C. § 314(d)....................2

## I. INTRODUCTION

Power Integrations' response leads with two misrepresentations that, when corrected, undercut its argument. First, Power Integrations writes that the "IPRs have now been resolved in PI's favor by the Federal Circuit." (Resp. at 1.) This is misleading. The IPRs were resolved by the PTAB in ON Semiconductor's favor, with the Federal Circuit reversing on procedural grounds—grounds the Supreme Court is poised to reverse. Contrary to what Power Integrations would have this Court believe, the landscape has changed dramatically since 2016: under the PTAB's substantive analysis, an analysis not addressed by the Federal Circuit, the '079 and '908 would be dead.

Second, Power Integrations writes that the possibility that a pending Supreme Court case might change the law is "something that the Ninth Circuit has repeatedly said is *not* an adequate basis for a stay." (*Id.* (emphasis in original).) Not true. In *Cuadras v. Metropcs Wireless, Inc.*, to give but one example, the Central District's Judge Snyder cited *two* Ninth Circuit cases and *four* California federal district court cases granting *Landis* stays[1] pending the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion,* 130 S. Ct. 3222 (May 24, 2010). No. CV 09-7897-CAS (AJWx), 2011 WL 227591, at *1–2 (C.D. Cal. Jan 21, 2011). There are many more examples: Issuing stays when the Supreme Court grants cert is, it turns out, rather common.[2]

---

[1] As described in Fairchild's opening brief (at 5 *et seq.*), *Landis* stays are stays granted pursuant to *Landis v. North American Co.*, 299 U.S. 248 (1936), in response to potential changes in the law arising from another action.

[2] **Ninth Circuit.** *E.g.*, *Ganezer v. DirectBuy, Inc.,* 571 F.3d 846 (9th Cir 2009) (stay pending Supreme Court decision in *Hertz Corp. v. Friend*); *Means v. Navajo Nation*, 432 F.3d 924, 924 n.* (9th Cir. 2005) ("[w]e withdrew submission of this case when the Supreme Court granted certiorari in *United States v. Lara*"); *Demshki v. Monteith*, 255 F.3d 986, 988 (9th Cir. 2001) ("[w]e granted the Committee's request to stay the appeal pending the Supreme Court's decision in *Board of Trustees of the University of Alabama v. Garrett*"); *McCarthy v. Apfel*, 221 F.3d 1119, 1122 n.3 (9th Cir. 2000) ("In *Forney v. Chater*, we held that a remand pursuant to the Social Security Act is not appealable. After the Supreme Court granted certiorari in that case, the Commissioner obtained a stay of proceedings of the present case pending a decision by the Supreme Court in *Forney*."); *Polykoff v. Collins*, 816 F.2d 1326, 1330 (9th Cir. 1987) ("[T]his court granted appellants' motion to stay the appeal pending the Supreme Court's decision in *Brockett v. Spokane Arcades, Inc.*").

**Other Circuits.** *E.g., Anker v. Wesley*, 670 F. Supp. 2d 339, 341 (D. Del. 2009) (stayed after Supreme Court grant of certiorari in relevant case); *Houlihan v. Sussex Tech. Sch. Dist.*, 461 F. Supp. 2d 252, 255 (D. Del. 2006) (same); *Odneal v. Dretke*, 435 F. Supp. 2d 608, 611 (S.D. Tex. 2006), *rev'd in part on other grounds*, 324 F. App'x 297 (5th Cir. 2009) (same); *Michael v. Ghee*,

Power Integrations' misreading of one footnote in one habeas case, *Yong v. INS*, does not change that.

When these misrepresentations are corrected, Power Integrations' response unravels. As Power Integrations notes, statistics show a *greater than 70%* chance that the Supreme Court will reverse *WiFi-One v. Broadcom*. (Resp. at 7; D.I. 1089-2 at 5.) While impossible to predict, of course, chances here are even higher since the Federal Circuit, in a fractured opinion, interpreted "final and nonappealable" in 35 U.S.C. § 314(d) to mean "nonfinal and appealable." Just last year, the Supreme Court reversed the Federal Circuit's interpretation of the same IPR statute, finding that the Federal Circuit has failed to read the "the plain text of [the statute]." *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018).

The damages retrial has yet to start; a stay is likely to dispose of trial altogether, simplifying the issues; and any harm that Power Integrations might suffer—there is none—is of its own making. This Court should grant a stay.

## II. ARGUMENT

### A. Power Integrations Applies The Wrong Standard

Power Integrations applies the wrong standard. Contrary to Power Integrations' claim, this is *not* a stay pending a PTO validity challenge. (Resp. at 1–3, *passim*.) The PTO has already spoken. Therefore *Telemac*, which expressly governs stays "pending the conclusion of a PTO examination [or IPR]" is inapposite because the PTO action has already concluded. *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1110–1111 (N.D. Cal. 2006); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030 (C.D. Cal. 2013) (same standard for IPRs). Rather, as Power Integrations acknowledges but then largely ignores, *Telemac* does not apply—*Landis* does.

But because Power Integrations believes that its case is stronger under *Telemac*, it forges ahead with the *Telemac* standard (at 3–10) and attempts to reargue the 2016 motion to stay (at 1,

---

325 F. Supp. 2d 829, 831-33 (N.D. Ohio 2004) (same); *Johns v. Evergreen Presbyterian Ministries, Inc.*, 826 F. Supp. 1050, 1051 (E.D. Tex. 1993) ("the interests of justice, judicial economy and plain prudence compel the Court to stay this case until the Supreme Court renders its ruling in *Landgraf [v. USI Film Prods.*]"); *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1557 (M.D. Fla. 1987).

3–4)—going so far as to take issue with cases Fairchild cited in its 2016 motion *but not* in the instant motion (at 4 ("each of the cases cited [in 2016] involved very early stage litigation")). Power Integrations' straw-man arguments should be rejected.

While Fairchild believes Power Integrations waived its position by failing to address Fairchild's arguments and the *Landis* standard, *see, e.g.*, *Zaklit v. Glob. Linguist Sols., LLC*, No. CV 13-8654 MMM (MANx), 2014 WL 12521725, at *13 (C.D. Cal. Mar. 24, 2014) (failure of party in opposition brief to address argument waives issue), a stay is also appropriate under *Telemac*—which, Power Integrations neglects to mention, notes this district's "liberal policy in favor of granting motions to stay proceedings pending the outcome" PTO proceedings. *Telemac*, 450 F. Supp. 2d at 1111 (citation omitted).

### B. A Stay Is Appropriate Under *Telemac*

#### 1. This Not A "Very Late Stage" Case

Power Integrations portrays this case as nearly over. (Resp. at 4–5.) But the damages retrial has yet to start; and because Power Integrations announced at the August 16th CMC that it intends to present a new damages theory—as it must, having overreached twice before—this case cannot go to trial without, at the very least, damages contentions, targeted fact discovery, and expert discovery. None of this has happened, and no trial date has been set.

Thus, contrary to what Power Integrations argues, the answer to *Telemac* factor one—"whether discovery is complete and whether a trial date has been set"—is a resounding "no." *Telemac* 450 F. Supp. 2d at 1111. That alone distinguishes this case not only from *Telemac*, where discovery was well under way and a trial date had been set, *id.*, but from the other cases Power Integrations cites. *Universal Elecs.*, 943 F. Supp. 2d at 1031 (discovery served and trial date set); *Interwoven, Inc. v. Vertical Comput. Sys., Inc.*, No. C 10-04645 RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012) ("[d]iscovery is well underway"); *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 WL 1052883, at *2 (N.D. Cal. April 5, 2007) (noting "large investment in preparation to produce a mass of documents, most of which work would have to be reduplicated later were a stay now granted.").

Power Integrations' response pegs the propriety of a stay to claim construction (Resp. at 4–5), as if the rule were "no stays after *Markman*." That, of course, is not the rule. *See, e.g.*, *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (granting motion to stay after claim construction hearing). And while Power Integrations faults Fairchild for citing to no case quite like this one (Resp. at 4–5, *passim*), neither has Power Integrations. No wonder: this case is sui generis—damages have been litigated (and overturned) twice, the PTAB invalidated all asserted claims, and the Supreme Court is about to rule on a case, *Dex Media*, that could dispose of this action entirely.

In any event, the "[c]ourt must decide stay requests on a case-by-case basis." *TPK Touch Sols., Inc. v. Wintek Electro–Optics Corp.*, No. 13–cv–2218-JST, 2013 WL 6021324, at *1 (N.D. Cal. Nov. 13, 2013). And the procedural posture of *this* case—a bifurcated trial where only damages remain—favors a stay.

*SynQor v. Artesyn Technologies*, which Power Integrations cites, supports this. The *SynQor* court, which denied a stay, distinguished *Standard Havens*, which looks like this case and granted a stay. 2012 U.S. App. LEXIS 1992, at *6 (Fed. Cir. Jan. 31, 2012) (citing *Standard Havens Prods. v. Gencor Indus.*, 996 F.2d 1236 (Fed. Cir. 1993)). In *Standard Havens*, the Federal Circuit "directed the district court to stay its *damages proceedings* until the PTO reexaminations proceeding became final. In that case the PTO's proceedings were complete and the decision of the [Board of Patent Appeals and Interferences] was on appeal before another district court." *Id.* (emphasis added). Likewise here: the PTO's proceedings are complete, and the damages retrial should be stayed until the patentability or unpatentability of Power Integrations' patents has been finalized.

### C. A Stay Will More Likely Than Not Simplify The Issues

Power Integrations predicts that the Supreme Court will not reverse *WiFi-One*. (Resp. 5–8.) Power Integrations does not and cannot know what the Supreme Court will do; but what it *does* know is that the statistics it cites indicate a greater than 70% chance that the Supreme Court will reverse. (Resp. at 7; D.I. 1089-2 at 5.) It is, in other words, more likely than not that the PTO's cancellation of all asserted claims in this case will be reinstated, potentially eliminating the

need for a third damages retrial. One could hardly conceive of greater simplification. *See, e.g.*, *In re Cygnus Telecomms. Tech., LLC, Patent Litig.,* 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (stay is "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue.")

In any event, the basis for Power Integrations' prediction is undermined by its selective citation of Supreme Court precedent. Although it quotes liberally from *SAS Institute, Inc. v. Iancu* and *Cuozzo Speed Techs., LLC v. Lee* (*see* Resp. at 5–6), it omits critical language from those cases that directly supports Fairchild's position that Section 314(d)'s "final and nonappealable" bars judicial review. As the Supreme Court noted in *SAS Institute*:

> Even if the statute forbids his partial institution practice, the Director suggests we lack the power to say so. By way of support, he points to § 314(d) and our decision in *Cuozzo*. Section 314(d) says that the "determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." In *Cuozzo*, we held that *this provision prevented courts from entertaining an argument that the Director erred in instituting an inter partes review* of certain patent claims.

*SAS Inst.*, 138 S. Ct. at 1359 (citations omitted, emphasis added).

*Dex Media* addresses precisely this, but from a slightly different angle—namely, whether the statute permits judicial review of the Director's decision to institute an IPR upon finding that the time bar does not apply. (*See* D.I. 1087-3, Exhibit A.) Contrary to what Power Integrations argues, both *SAS Institute* and *Cuozzo* suggest "that the plain text of [the statute] supplies a ready answer"—*no appeal is allowed*. *SAS*, 138 S. Ct. at 1354.

### D. Any Prejudice To Power Integrations—And There Is None—Is Self-Created

Despite Power Integrations' efforts to absolve itself (Resp. at 3–4), the procedural posture of this case is a direct result of Power Integration's prior overreaches on its damages theories. The Federal Circuit made this crystal clear:

> Here, the power supply controllers had other valuable features, such as jittering. . . . In fact, Power Integrations sought infringement damages from Fairchild on the jittering feature in these same products in a separate lawsuit based on different patents, and we

> affirmed the judgment of infringement. Moreover, many of Fairchild's technical marketing documents specifically mention the jittering feature and other features in addition to the '079 patented feature. There is no proof that these features, including jittering, did not affect consumer demand. Without such proof, Power Integrations did not meet its burden to show that the patented feature was the sole driver of consumer demand, i.e., that it alone motivated consumers to buy the accused products.

*Power Integrations v. Fairchild Semiconductor*, 904 F.3d 965, 979–80 (Fed. Cir. 2018). The prejudice now claimed by Power Integrations, "delayed payment," is prejudice of its own making. (Resp. at 9.)

In any event, Fairchild stands by its argument that Power Integrations' decision to forego an injunction undermines its claims of harm. This is not only because at least some cases say so explicitly. *See, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 0198, 1110 (9th Cir. 2005) (non-movant seeking no injunctive or declaratory relief suffers no harm because stay "would result, at worst, in a delay in monetary recovery"); *GT Nexus, Inc. v. Inttra, Inc.*, No. C 11-02145-SBA, 2014 WL 3373088, at *4 n.7 (N.D. Cal. July 9, 2014) ("[A]ttempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief.") (quoting *Zillow, Inc. v. Trulia, Inc.*, No. C12-1549 JLR, 2013 WL 5530573, at *21 (W.D. Was. Oct. 7, 2013) (collecting cases)). But also because, as Fairchild noted in 2016, Power Integrations' decision to forego an injunction in this case was a tactical maneuver to collect damages as quickly as possible lest the PTO invalidate the '079 and '908. (D.I. 1012 at 1.) Before the IPRs were filed and instituted, Power Integrations consistently asked this Court for leave to file a permanent injunction (*see, e.g.*, D.I. 956), only to change tack when the PTO instituted IPRs on every asserted claim. Power Integrations is anxious to get paid before the Supreme Court reinstates the PTO's cancellation of all asserted claims, but that anxiety does not justify moving forward with a *third* damages retrial only to have the Supreme Court undo everything less than twelve months from now.

//

//

//

There was, moreover, nothing tactical about the timing of ON Semiconductor's IPRs. ON Semiconductor[3] filed its IPR on the '079 patent on March 29, 2016, nearly six months before its merger with Fairchild. It did so because Power Integrations had threatened to bring suit against ON Semiconductor's own products. As it turned out, ON Semiconductor's apprehension that Power Integrations might sue for alleged infringement of the '079 patent was not unfounded—Power Integrations did *exactly* that just a few months later. *See* Complaint, *Power Integrations v. ON Semiconductor*, Case No. 5:16-cv-06371-BLF (D.I. 1) (filed Nov. 1, 2016). There was no "undue tactical advantage" in ON Semiconductor's mounting a good faith defense in view of Power Integrations' assertions against ON Semiconductor's own products, nor has Power Integrations demonstrated otherwise.

Finally, Power Integrations' position here *is* inconsistent with the position it took in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1372-LPS (D. Del.). While Power Integrations did not move for a formal "stay," it asked the Delaware district court to "stage" the case so that it would not proceed until the Supreme Court ruled. Power Integrations' proposal—which the Delaware court adopted in full (No. 1:04-cv-01371 (D. Del.), D.I. 966)—was as follows:

> Power Integrations therefore suggests the parties provide ten-page simultaneous opening briefs within two weeks of the Supreme Court's ruling, with ten-page simultaneous replies due a week later. This will allow the Court and the parties to conserve resources and focus their near-term efforts on their other ongoing litigation, while planning to move forward in this case once the Supreme Court has clarified the appropriate framework for quantifying the harm in a case where domestic infringement has occurred and caused harm both inside and outside the U.S.

(*Id.* at 2.)

If the Court is not inclined to formally stay this case, Fairchild respectfully requests that the Court adopt the procedure proposed by Power Integrations in the Delaware case. Specifically,

[3] Power Integrations' brief incorrectly states that Fairchild filed "eleventh-hour IPRs." Fairchild did not file the IPRs in question, ON Semiconductor did, and did so before its merger with Fairchild. Moreover, Power Integrations' assertion that Fairchild "then joined these IPRs as an admitted 'real party in interest' is false, and Power Integrations provides no citation—because it cannot—in support of its assertion that Fairchild "joined" any of ON's IPRs.

Fairchild proposes that the Court order the parties to submit a joint status statement and proposal "within two weeks of the Supreme Court's ruling" in *Dex Media* concerning the impact of the Supreme Court's decision on the present proceedings.

**III. CONCLUSION**

For the foregoing reasons, the Court should stay this case pending the Supreme Court's *Dex Media* decision.

Dated: August 22, 2019

MORRISON & FOERSTER LLP

By: *_/s/ Colette Reiner Mayer_*
COLETTE REINER MAYER

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., FAIRCHILD SEMICONDUCTOR CORPORATION, and FAIRCHILD (TAIWAN) CORPORATION